Chief Justice Robertson
delivered the Opinion of the Court.
Riddlesbarger having obtained a judgment against Craddock, for damages for the conversion of a field of growing corn, which he (Riddlesbarger) had bought, at a sale under & fieri facias, as the property of one of the defendants in the execution, Craddock now urges a reversal of the judgment, and relies on three grounds :&emdash; *206 first, that there was no judgment that authorized l;he execution ; second, that growing corn was not liable to sale in virtue of a fieri facias; third, that the circuit court erred in rejecting evidence offered by Craddock, and in instructing the jury, and in withholding instructions.
The judgment Sfc. authorized tiwfi.fa. under which the salo was made.
Perennial trees and plants,with their ungathered produce, are incidents of the soil, and not subject to execution : all the products of annual planting $• cultivation are ’ personal proporty, subject to sale by the owner, and were, previous to the act of 1834,sub-jéct, even ungathared If unripe, to levy lósale under execution ; and the purchaser may enter upon the land, to mature and remove the crop.
An officer' having levied upon a growing crop, might proceed to sell it, as soon as advertised 2fC.; neither he, nor the creditor, was bound to finish the culture, or Jet it stand at bis risk.
As we are of the opinion, that the judgment and the replevin bond exhibited in the record, authorized the execution, and sufficiently correspond with it, and witfi each other,' for every purpose of reasonable certainty, we shall, without a more particular notice of the first ground, proceed to the consideration of the second and third grounds.
Second. Although such annual productions or fruits of the earth as clover, timothy, spontaneous grasses, apples, pears,- peaches, cherries &c. are considered as incidents to the land in which they are nourished, and are, therefore, not personal, nevertheless every thing produced from the earth by annual planting, cultivation and labor, and which is therefore denominated, for the sake of contradistinction, firudus industries, is deemed personal and may be sold, as personalty, even whilst growing and immature. And the purchaser of such an article in such a growing state will have the consequential right of ingress and egress, for purposes of cultivation, preservation and removal, though ho will have acquired no interest in the land itself, nor any other control or dominion over it, than such as may-be necessarily incident to his right to the growing firudus. Parham vs. Thomson, 2 J. J. Marshall, 159, and the authorities therein cited; and also Eaton vs. Southby, 2 Willis, 131.
/ The authorities leave no pretext for doubting that growing corn is a chattel, and, as such, may be sold by the owner, or taken by an officer in virtue of a process of fieri facias. The only doubt which has been intimated, is as to the proper time of selling under an execution. But, though some have expressed the opinion, that the sale should be postponed until after the corn shall have been matured and severed from the land,- and though such a course might often be advantageous to *207 all parties concerned, still it seems to us that, prior to an act of the last legislature, the law conceded the right to sell the corn in the condition in which it was when the execution was levied on it. The right to levy implies the right to sell, as soon as legal notice can be published of the time and place of sale, and of the thing to be sold.. Was it the duty of an officer to keep possession of growing corn for months after his levy, and, in the mean time, cultivate and gather it, or be responsible for its deterioration in consequence of non-cultivation, or for the wasting, or destruction, or abduction of it by the owner, or by other persons ? Or was all such hazard and burthen devolved on the creditor ? What might have been most expedient in a given case, or what the sheriff, (with the concurrence of the creditor and debtor or either of them,) might have done, is far different from what he had the power to do in -virtue of his -legal authority. And, not doubting his power to sell growing corn, we must decide accordingly. It is our duty to declare, not to give, the law.
Tbo landlorif has a lien on the goods and chattels belonging to his tenant, and found upon-the rented land,, for one year’» rent, or what lessmay be due; and the officer who levies a fi. fa. on them, havingnotice of the landlord’s claim, is bound to pay or tender to him, (or his agent) such arrears of rent; and must,thereupon, take and sell enough of the tenant’s pro perty to pay both demand’.
Third. On the trial, Craddock offered to prove, that one of the defendants in the execution (John Jeffries, sr.) was his tenant ; had rented the field in yghich the corn, sold under the execution, was growing ; that another of the execution defendants, (John Jeffries, jr.) who planted, cultivated and claimed the corn, was the subtenant of John Jeffries, sr. ; that the latter was in arrear to him (Craddock,) for rent reserved in money, and that, after’the sale under the execution, the corn was distrained, and bought by him (Craddock,) for'his rent. But the circuit court refused to admit the offered proof, and instructed the jury, in substance, that tho corn was subject to be sold under the execution, and that the plaintiff had a right to recover the value of the corn.
The circuit court must have been influenced, throughout, by the opinion, either that Craddock had no lien on the corn ; or that, if he had a lien, it did not affect the right of the purchaser under the-execution; Ifei *208 ther of these positions can be maintained, there is no error in any of the opinions of the court below.
Tlie fourth section of an act of 1811, 2 Digest, 1060, contains the following provision : “ Nor shall the landlord have any exclusive lien on the property of his tenant or under-tenant, except the same is the produce of the farm or- place rented or leased.” The preexisting lien implied by this provision, (which was intended as a restriction of it,) was given by the fourteenth chapter of a statute of the 8th of Anne, reenacted in Virginia, prior to the separation of Kentucky, and incorporated substantially in the statute of 1828, (twelfth section) for amending and reducing into.one the execution laws of Kentucky, and which is in these words : “ No goods or chattels whatsoever, lying or being in or upon any messuage, lands or tenements, which shall be leased for life or lives, term of years, at will, or otherwise, and where the rent is reserved and made payable in money, shall, at any time hereafter, be liable to be taken by virtue of a writ of execution, attachment or other process, unless the party so taking the same, shall, before the removal of such goods off the demised premises, pay or tender to the landlord, if he reside within that county, or to his agent, if any known agent lie. have resident within the same county, all the money due for the rent of the said premises at the taking of such goods or chattels in execution &c., provided nevertheless, that such rent arrear do not amount to more than one year’s rent ;■ and if more be due, then the party suing out such execution may pay or tender to such landlord, or his agent, one year’s rent, and may proceed to execute his judgment, or levy his attachment, if the proceedings be by attachment; and the sheriff or other officer serving the same is hereby required and empowered to levy, as well the money so paid for rent, as the execution money, and pay the same over to the plaintiff.”
This enactment seems to extend to all the goods and chattels the lien which the fourth section of the act of 1811 recognized, and restricted to the produce of the land. But, as the lien described in the act of 1811, is that giv *209 vn by the statute of Anne, and as the twelfth section of the act of 1S2S, is a substantial transcript of that statute, the established interpretation of the latter must be deemed the true meaning and effect of the foregoing enactment of 1828.
The immediate landlord only, has a lien upon the goods Sfc. of his tenant:-— it does not extend to a subtenant’s goods.-
An officer who sells a tenant’s goods under -a fi.fa., without due notice of the landlord’s rentclaim,isnot liable to him.
The net value of the goods, is the extent of officer’s liability.
The lien for rent is only for the year last preceding the levy.
A bill of sale under a fi. fa, is equivalent to a removal of the goods,and vests the title, free of the landlord’s claim.
jt ¡3 the rule ofthe^common ¡n^the custody of the law, (taken in execution 4-c.) are not subject to distress for rent; and neither the statutes Anne, nor any statute of Kentucky, have essentially changed this rule, though they give a new remedy — requiring the creditor who has a levy made on a tenant's goods tyc., to pay the landlord his rent in arrear, not exceeding one year ; and rendering the officer who, with notice of the landlord’s claim, makes such levy, liable, if he proceeds to set), without satisfying the-rent claim. So far only does the lien extend ; it doesnot affect the title of the purchaser at the execution sale. The remedy is against the creditor and officer. "
The following points have been settled by the courts of England concerning the fourteenth section of the statute of 8th Anne : — first, that the lien applies only to the immediate landlord, and does not apply as between the ground landlord and a sublessee. Burnet’s case, Strange, 787.
Second. That the landlord must notify the sheriff of his lien prior to a sale under judicial process, and demand his rent, or otherwise it is not the duty of the sheriff to retain the rent. Waring vs. Duberry, Strange, 97.
Third. If the sheriff, after sufficient notice and demand, remove or sell the goods, he is liable only for the value of the goods sold after deducting proper expenses. Dod vs. Saxby, Strange, 1024.
Fourth. That the lien applies only to the rent due for the year immediately preceding the execution. Bradby on Distress, 118.
Fifth. That a bill of sale of the goods, under the execution, is a removal of them, and vests the title in the purchaser unincumbered by the landlord’s lien. Ibid, 119 ; and, exparte, Grove, 1 Atk. 104.
It is not necessary to enquire, whether the rejected evidence would, if admitted, have been sufficient to prove, that Craddock had, at the time of the levy or sale, a lien on the growing crop of corn ; for we are ■clearly of the opinion, that his lien, even if it then existed, did not invalidate the sale, or affect the purchaser’s right.
It is an indisputable rule of the common law, that goods in the custody of the law are not subject to distress for rent; and, therefore, it is well settled, that *210 goods taken in execution are not liable to distress until the execution be satisfied. Bradby on Distress, 115. It is equally well established by authority, that the fourteenth chapter of the 8th Anne did not abolish or materially affect this rule of the common law. The only object of that enactment was, to afford to landlords a new remedy, not against their tenants, but against execution creditors and officers acting under execution process, in favor of judgment creditors of tenants. According to the common law, when the goods of a tenant were taken and sold under execution, the title of the purchaser was not affected by the claim of the landlord, after re-, moval of the goods; nor was either the creditor, or the officer who levied and sold, responsible in any way to the landlord, who had no lien. The fourteenth chapter of the 8th Anne gave to certain landlords, qualified liens, by making it the duty of execution creditors to pay or tender what was due for rent, and b,y making it also the duty of the officer, who sold under execution, to pay the rent, or as much thereof as the amount of the proceeds of sale, provided he had been duly notified, prior to the sale, of the landlord’s right and claim. Put it is perfectly evident, that the common-law right to sell such goods under execution, and the consequent right to purchase them, were not affected by the statute of Anne, as it has been interpreted and enforced in England. And it would certainly have been inconsistent with analogy, and with the policy of the law, to have given any other interpretation or effect to that enactment. Purchasers, under execution, of property liable to such execution, should not be presumed to have perfect knowledge of the fact that the defendant in the execution is a tenant, and that his landlord has an unsatisfied claim for rent. Should such knowledge be presumed, or should purchasers be responsible for the latent claims of dormant landlords, sales of personal property, under execution, would be greatly affected, and the rights of debtors would be unnecessarily and injuriously jeoparded.
The statute, according to its established operation* *211 has given to landlords ample security, and even greater privileges than perhaps equal justice should have dictated, when it provides : first, that an execution creditor of a tenant shall, before he shall take the tenant’s goods in execution, pay or tender to the landlord one year’s rent, if so much be due ; and, second, that, if the creditor shall have failed to make the payment or tender, the landlord may, by giving notice of his claim to the officer acting under the execution, before a sale of the tenant’s goods, make such officer liable to him for the amount for which the property shall have been sold, or as much thereof as shall be sufficient for paying the rent in arrear. Such, and only such, is the remedy ; such, and only such, the security afforded by the fourteenth chapter of 8th Anne, as expounded and applied in England And what more could a reasonable landlord expect, or a vigilant landlord desire ? He may have a priority, to a qualified extent, over other creditors ; and he may have, too, (if he will,) the official responsibility of the sheriff. This is his utmost right ; and such is- the character of his lien. He has no lien to any other extent, or of any other kind. The tenant may make a valid sale of his goods. Mitchell vs. Franklin et al. 3 J. J Marshall, 482. An officer may make- a valid sale under execution, and the purchaser will not be affected by the landlord’s claim. The authorities, supra, and also Bradby, 229, and 3 Kent’s Com. 482, and a new and improved edition of Bradby, in the “ Law Library, No. III., 80-83.
Such is the ct lien” recognised in the act of 1811 ; and such only the lien given by the act of 1828. The only difference between the twelfth section of the latter'act, and the fourteenth chapter of 8th Anne, is, that the latter says, that no goods shall be taken in execution, and the former declares, that no goods shall be liable to be taken in execution. Such difference is verbal only. The intent and meaning of each are the same ; and, therefore, as before suggested, the effect of the Kentucky statute must be governed by the practical construction of its prototype of England.
By the common law,property of astranger found on rented land, was subject to the landlord’s distress ; but if one purchased a growing crop under ex’on, Sr left it to ripen, this was an exception : it was not liable. In Kentucky, .the law by which the property of a stranger might he distrained for rent, has been changed by statute, and the goods §-c.ofthe defendant in the distress warrant or some subtenant on the land, are alone liable to be taken.
Where an officer levied a fi. fa. on the crop of a tenant, and sold it to a stranger; —the landlord after-wards had it taken by distress for rent, sold a-' gain, and bo’t it himself; and thefirst purchaser. sued him foV this conversion —it was not enrol- to reject evidence [p. 207] offered on the trial, to show t{ip lien thp land lord had on the crop when levied on, notice of it to the purchaser fyc. for the purchaser under the fi. /a. with, or without, notice of the rent claim, acquired a good title,free of the lien, and the proof was irrelevant.
*212 At common law, the goods of strangers were, antler certain modifications, liable to distress whilst they were on the demised premises ; and, consequently, though a purchaser from the tenant, or from the sheriff under an execution against the tenant, acquired a perfect and indefeasible title, yet, by failing, in- proper time, to remove the goods from the demised land, he might have subjected them to liability to the landlord’s distress.— But, by permitting growing corn to remain until it shall become ripe and fit for being severed, the purchaser would not, even according to the common law, have subjected the corn to distress for the rent due by the former owner, because such a course .would be perfectly consistent with the title acquired by the purchaser, would be proper for husbandry, and would be rightful and not negligentand, therefore, would come within the principle of the various exceptions to the general rule of the common law. Bradby, 112, and Eaton vs. Southby, supra. Law Library, No. III., 83. But this common law rule has been altogether abolished by the second section of the act of 1811, 2 Dig. 1059, which declares, that “ no property shall hereafter be liable to be distrained for rent, unless the same shall belong to the person or persons against whom the distress warrant issued, or to some subtenant on the land leased or rented.” AH question about the removal of the corn, by the purchaser, is, therefore, superseded.
The conclusion seems to be fair and logical, that Craddock could not have derived any benefit from the rejected evidence, as to tenancy, or as to the distress warrant issued after the sale under the execution. And, consequently, the circuit court did not err in rejecting such irrelevant proof. Nor did it err in rejecting proof as to notice to the constable, of Craddock’s claim of rent ; for such notice could not affect the legal right to sell, and could operate only as between the constable and Craddock. And the consequence from the whole of the foregoing view, is, that the circuit court did not err in giving, or in withholding, instructions — unless there was error in refusing to instruct the jury, that, if lliddlesbarger had notice of Craddock’s *213 claim, as landlord, prior to the purchase of the corn, he had acquired no available right as against Craddock. But it is evident that, if, as we have decided, the corn was legally subject to sale under the execution, notwithstanding the landlord’s claim to rent, notice of that claim could not affect the purchaser’s right to the property which he bought.
After the sale, if the officer, haying due notice of Craddock’s right, as landlord, failed to pay to him the amount of the proceeds of the sale, or the amount of one year’s rent, if those proceeds were equal to it, Craddock’s remedy was not against Riddlesbarger, or the corn which he bought, but was against the execution creditor,.or the officer who sold the corn and failed to account to him according to law¿
Judgment affirmed.