Stone v. Bohm Brothers & Co.

CASE 28—EQUITY—NOVEMBER 30, 1880.

# Stone v. Bohm Brothers & Co.

### APPEAL FROM BOURBON COMMON PLEAS COURT.

1. A landlord has a superior lien upon the property of the tenant, specified in section 13, article 2, chapter 66, General Statutes, for one year's rent, due and to become due, against the creditors of the tenant, while such property remains upon the premises, and for fifteen days after its removal, whether the removal be accompanied with a fraudulent intent or not, and without regard to the manner of removal.
2. Not so, however, against *bona fide* purchasers who take the property off the premises.

BUCKLER & PATON FOR APPELLANT.

1. Section 13, article 2, chapter 66, General Statutes, gives the landlord a superior lien on the tenant's property, specified therein, against all persons whatsoever, whether they be creditors or purchasers. If this provision was not intended to change the law as it stood before its adoption, and the character of the lien from what it was under the acts of 1811, 1828, and 1843, it is a useless provision, because the landlord, by other provisions, has the same right he had under the old acts referred to. The substitution of the word "superior" for "exclusive" was not intended to change the character of the lien. It is only the more appropriate word.
2. The policy of the law is to protect the landlord. (8 Anne, chap. 14; 2 Statute Law, 1357; 1 *Ib.*, 639; Craddock v. Riddlesbarger, 2 Dana, 205; *Ib.*, 204; 3 J. J. Mar., 477; 4 Dana, 21; act 9th March, 1843; Beckwith v. Bent, 10 B. M., 95; Rev. Stat., sec. 14, art. 2, chap. 56; *Ib.*, 499; McLean v. McLean, 10 Bush, 167; act January 31, 1871 (Livery Stable Keepers); Stat. Ill., 1868, page 410; 70th Ill., 677.)

JNO. A. PRALL FOR APPELLEE.

1. Appellant had no lien upon the wheat after it had been sold by the tenant and removed from the premises. A proper construction of the statute is against the lien.
2. It has been repeatedly held that a tenant may, during his term, sell his goods and chattels, and the purchaser may hold them in defiance of any lien claimed by the landlord. (2 Dana, 204; 3 J. J. Mar., 477.)
3. Section 11, article 2, chapter 66, General Statutes, solves the difficulty by providing "that the distress warrant or attachment for rent shall

bind, and may be levied upon, any personal property of the original tenant found in the county, and upon the property of the assignee or under-tenant found on the leased premises."

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The appellant, Stone, rented his farm to Ware for the year 1876, the rent to become due March 1, 1877.

In July, 1876, Ware removed two hundred bushels of wheat from the premises, and sold it to Neeley & Gass, who paid to him the price of it, except $96.10, which was on the day of sale garnisheed in their hands by the appellees, Bohm Brothers & Co., to secure a debt due them from Ware.

Two days thereafter appellant Stone sued out an attachment for the rent to become due, and had it levied on the wheat, which was in the possession of Neely & Gass.

They answered the suit of appellees, and alleged the facts stated and their willingness to pay the remainder of the price of the wheat to whomsoever the court should adjudge entitled to it.

The suits were consolidated and heard together. The court adjudged that Neely & Gass should pay the $96.10 to the appellees, and the appellant appeals from that judgment.

He claims that the $96.10 should have been adjudged to him, because he had a lien upon the wheat for fifteen days after its removal from his premises.

Our statute—section 13, article 2, chapter 66, General Statutes—after providing that the landlord shall have a superior lien on the produce of the farm and other personal property of the tenant, for one year's rent, due or to become due, contains this clause:

" But if any such property be removed openly from the leased premises, and without fraudulent intent, and not

Stone v. Bohm Brothers & Co.

·returned, the lien of the landlord shall be lost as to it, ·unless the same be asserted by proper procedure within fifteen days from the day of removal."

This provision is similar to one contained in 8th Anne, ·chapter 14, and 2d George, chapter 19, except it extends the exception embraced by it further than they did. Under them, in order to preserve the lien on the property after its removal, it was necessary to show that the removal was fraudulent. But under the exception in section 13, *supra*, no fraud need be shown to preserve the lien given by the :statute, and this seems to have been the material change which the legislature intended to make by it.

The statute is plain as to the property on which the lien is provided, but against whom and between whom does this lien exist, is the question which lies at the foundation of the case before us. That proposition settled, and the solution is easy.

The lien given by section 13, from which the exception quoted was taken, it will be seen, is upon the *property of the tenant*. The exception authorizing the preservation of the lien by proper procedure within fifteen days from the ·day of the removal of the property, uses the terms "such *property*," referring to *the property of the tenant*, in designating what property as to which the landlord may preserve his lien for fifteen days. The language of the statute seems to limit the lien to the property of the tenant both before and after removal. But we are not left to construction of the words alone of the statute, except wherein they differ from ·the words of former similar statutes, from which it was evidently taken, as like statutes have been construed and ·authority laid down for our guide.

At common law, the landlord had a lien on the property of the tenant while it remained upon the leased premises, but so soon as it was removed the lien was gone.

It is true that, according to Coke on Littleton, page 161, the landlord might make fresh pursuit when the tenant fraudulently removed the property from the premises to avoid paying the rent, and distrain it for his rent.

But Lord Coke says in that case, if the property were taken, it was deemed to be within the fee by judgment of law.

By the Virginia act of 1748, the landlord was authorized to pursue and distrain the property within ten days after its fraudulent removal, if it had not been *bona fide* sold. The common law lien was extended by this act to ten days after a fraudulent removal of the property; but in that case a *bona fide* purchaser was protected. While the landlord's lien was gradually widening, the extravagant privilege of issuing his own warrant, and the unreasonable and anti-social right of distraining property of strangers that had "lain down and risen up," found upon the premises, were swept away by the first and second sections of the act of the legislature of January 31, 1811. And by it the right of distress was limited to rent reserved and payable in money. These restrictions of the rigors of the common law, were added to by section four of that act, which limited the landlord's exclusive lien to the produce of the farm or premises leased. The statute of 8th Anne, chapter 14, gave the landlord a lien upon *all* the goods and chattels *of the tenant* on the demised premises. That provision of 8th Anne was restored by our act of February 12, 1828. (Burket v. Bonde, 3 Dana, 209.)

The fourth section of the act of 1811, which is, so far as the persons against whom the landlord's lien existed, the same as our present statute, was construed by this court to mean, that as long as the produce of the farm remained on the leased premises, and the rent was in arrear and distrainable, the produce, being the only species of property on which a landlord then had a lien, could not be taken by *other creditors* until the rent was paid. (3 J. J. Mar., 483, Mitchell v. Franklin, &c.) It was also held in that case, that a tenant during his term could sell his property, and a *bona fide* purchaser could hold it in defiance of any lien claimed by the landlord.

The same doctrine was laid down in the case of Snyder v. Hitt, 2 Dana, 204, in which, speaking of the second section of the act of 1811, the court said: "It gives a landlord a right to distrain the goods of his tenant or sub-tenant *only*, if a tenant shall have made a *bona fide* sale of his goods; *they are not liable to distress, even though they may not have been actually removed* from his ostensible possession." (Hood v. Hanning, 4 Dana, 23.)

A *bona fide* mortgage of the goods of the tenant, while they remained in the tenant's possession, was held in the latter case to have a superior lien to the landlord's.

But as to mortgagees, the legislature, by the act of 1843, rendered their claims inferior to the lien of the landlord; and it was so held in Beckwith v. Dent & Duvall, 10th Ben. Mon., 96, and the law is continued by section 12, article 2, chapter 66, General Statutes.

In the case of Craddock v. Riddlesbarger, 2 Dana, 205, it was held, under the act of 1828, that an officer might make a valid sale, under execution, of the tenant's property

while it remained on the leased premises, and the purchaser would not be affected by the landlord's claim.

The provisions of the act of 1828, relative to goods of the tenant taken and sold under execution, were declared to afford to landlords a new remedy, *not against their tenants*, but against execution creditors and officers acting under process in favor of judgment creditors of tenants.

The same provision, in effect, is carried into the General Statutes by sec. 16, art. 2, chap. 66. So we have seen that the legislature, beginning in 1843, altered the rule laid down in Mitchell v. Franklin *et al.*, 3 J. J. M., 432; Snyder v. Hitt, 2 Dana, 204; Craddock v. Riddlesbarger, 2 Dana, 205, and Hood v. Hanning, 4 Dana, 23, that the lien of the landlord for rent applied alone between him, the tenant, and the latter's creditors, so far as to give the landlord priority over mortgagees, leaving, however, the rights of other purchasers untouched. This legislation is quite significant. It shows that the attention of the legislature was drawn to the subject of the persons and classes against whom the landlord's lien had been declared to exist, and it only extended his lien against the class of *bona fide* purchasers, denominated mortgagees. If the legislature had intended to include other classes of purchasers, some express provision would have been made to that effect. But instead of doing this, purchasers at execution sales of the tenant's property, are protected from the landlord's lien by section 16, article 2, chapter 66, General Statutes, and the landlord is given his lien upon the *proceeds* of such sale.

In the light of adjudications upon the legislation of this State by our own court, it would seem clear that section 13, article 2, chapter 66, General Statutes, provides a superior lien in favor of the landlord upon the property of *the tenant,*

Stone v. Bohm Brothers & Co.

specified therein, for one year's rent due, and to become due, against the latter's creditors, while such property remains upon the premises, and for fifteen days after its removal therefrom, whether the removal be accompanied with a fraudulent intent or not, and without regard to the manner of removal.

This construction is in harmony with the decisions of other states upon statutes similar to ours. (Slocum v. Clark, 2 Hill, N. Y. R., 475; Frisbey v. Thayer, 25 Wend., 306; ·Coles & Howe v. Marquand & Freeman, 2 Hill, 447; Davis v. Payne, 4 Randolph (Va.), 333.)

The landlord's lien is a strictly legal right, and not favored ıin equity. Its extension comes from statutory enactment, ,and this court cannot, by construction of a statutory provision which is a substantial transcript of former statutes ·that have been given an established interpretation, depart ·from their meaning thus determined. Evils may be imagined under either interpretation of the statute contended for in this case; but we find no rule of law which authorizes us to interrupt a well established interpretation with which the law-making power has shown itself familiar and con-.tented.

Wherefore, the judgment is affirmed.