STATE OF MARYLAND, use of Samuel T. Wilson *vs.* JOSEPH O. FOWLER et al.

*Liability of Sureties on Sheriff's Bond for Improper Execution of Writ of Fi. Fa.—Acts Virtute Officii and Acts Colore Officii—Levy of Execution on Growing Crops.*

The levy of a writ of execution in an illegal and oppressive manner, upon property subject to the execution, is an official act, for which the sureties on the sheriff's bond are liable.

When a sheriff levies an execution upon a growing crop of peaches, which he forbids the defendant to pick and ship and which he neglects to pick himself, so that the crop is destroyed, the sheriff executes the writ in a wrongful and oppressive manner, and the sureties on his bond, conditioned that he shall well and faithfully execute the office, are liable in damages to the injured party.

The sureties of a sheriff are liable for his wrongful acts done *virtute officii* but not for acts done only *colore officii.* Official acts, or those done *virtute officii,* are such that if properly done create no liability, but which, if neglected or improperly done or in the doing of which a discretion is abused do render the sheriff and his sureties liable. An act done only *colore officii* is one which neither his office nor the writ gives him any authority to do, and where there is no question as to misfeasance or negligence in the performance of the duty.

A growing crop of peaches or other fruit requiring periodical cultivation are *fructus industriales* and personal property, and may be taken in execution as such.

In levying an execution upon a growing crop, a manual taking of possession is not necessary, but it is sufficient if the defendant be notified and an endorsement made on the levy.

Appeal from a judgment of the Circuit Court for Anne Arundel County (Jones and Revell, JJ.).

The cause was argued before McSHERRY, C. J., Fow-
LER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*James M. Munroe* (with whom was *John P. Poe* on the
brief), for the appellant.

*Daniel R. Magruder* (with whom was *Robert Moss* on
the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This is a suit upon the official bond of Joseph O. Fow-
ler as sheriff of Anne Arundel County.   The declaration
alleges that Thomas H. Arnold on the 14th of May,
1897, obtained judgment in the Circuit Court for Anne
Arundel County against Samuel T. Wilson, the equi-
table plaintiff in this case, for the sum of $148.29 and
$8.15 costs of suit; that on August 31, 1897, a writ of
*fieri facias* upon this judgment was issued out of the
same Court, to the said sheriff, in virtue of which, on
the 1st of September, 1897, he seized and took in execu-
tion the growing crops of corn of said Wilson upon
forty acres of land, and the growing peach crop of said
Wilson on about 600 peach trees, said corn and peaches
being of much greater value than was necessary to sat-
isfy said judgment and costs; that the sheriff forbade
the plaintiff to pick, ship or sell the said crop of peaches,
or any part thereof, and failed and neglected himself
to pick, ship or sell, or to provide for picking, selling,
or shipping the same, though said crop of peaches was
then ready to pick and ship, and was perishable in its
nature; that the sheriff so held said peach crop from the
1st to the 4th of September, when he released the levy
thereon, as not necessary to protect the judgment, dur-
ing which time he suffered the fruit to fall from the trees
and rot upon the ground, so that the crop of peaches
became utterly worthless and was wholly lost; and that
the conduct of the sheriff in the execution of the writ of
*fieri facias* was wrongful, illegal, and oppressive, and the
plaintiff was thereby greatly damaged, and an action
had accrued to him upon said official bond.

The sheriff and his sureties pleaded that the sheriff

did well and faithfully execute the said office of sheriff, and did not wrongfully, illegally and oppressively execute the writ of *fieri facias*, and issue was joined upon this plea. Without going into the details of the testimony, it is sufficient to say that it fully sustained every averment of fact in the declaration. At the close of the testimony, the defendants offered a prayer that there was no evidence legally sufficient to enable the plaintiff to recover under the pleadings and evidence in the case, and the verdict of the jury must be for the defendants; and the Court granted the prayer, to which ruling of the Court the plaintiff excepted and has brought up this appeal. The gravamen of this declaration is the *wrongful, illegal and oppressive manner in which the sheriff executed the mandate of the writ of fieri facias*, and a question of law as to the liability of the sureties in this action is thus presented, which is one of first impression in this Court. In view of the complete correspondence in this case of the *allegata* and *probata*, it would seem that this question would have been better raised by a demurrer to the declaration than to the evidence, but the defendants preferred, for reasons doubtless satisfactory to them, to rest upon the denial as presented by their plea.

We were advised by the argument of counsel that the defence was based, and the Court below rested its decision upon, the opinion of this Court in *State* v. *Brown*, 54 Md. 322, and it becomes necessary therefore to give to that decision, and to the principles and authorities upon which it is founded, careful consideration. That case was a suit upon a bond of a constable to recover damages for the taking of plaintiff's property under an execution against a third party. There was a demurrer to the declaration which was sustained, and this Court affirmed the judgment on the demurrer, holding that the taking of a stranger's property under an execution was not a wrong done in the discharge of the constable's official duty, and was not within the terms of the contract entered into by the sureties. Whatever deductions may be drawn from that decision, or from the

language used in the opinion, there is a marked distinction between that case and the present one. There, CHIEF JUDGE BARTOL said: "The only question presented by the appeal is whether an action can be maintained against a constable and his sureties on his official bond, *for a trespass committed by him* in taking the goods of the equitable plaintiff on an execution issued against the property of another person"; whereas, here, the only question is whether an action can be maintained against a sheriff and his sureties on his official bond, for wrongful and oppressive conduct in executing his writ according to the mandate thereof, upon the property of the same person against whom the execution issued, and in the taking of which no trespass can be committed. The Code prescribes the same condition for the bond of sheriffs and constables, viz., "that he shall well and faithfully execute the office of ———— in ———— County, in all things appertaining thereto"—and there is no other statute explaining or affecting the liability of their sureties. The decision in 54 Md. turned upon the distinction between acts done *virtute officii*, and those done *colore officii*—the act complained of in that case being held to belong to the latter class. Upon the soundness of that distinction as there applied, Courts of high reputation and judges of great distinction have differed, and still differ, widely. In *Lammon* v. *Feusier*, 111 U. S. 17, where a conclusion was reached different from that of 54 Md., many of the cases are cited and reviewed. When such eminent judges as CHIEF JUDGE GREEN of New Jersey, JUDGE COWEN of New York, and JUDGE RUFFIN of North Carolina, are found in accord with the view expressed in 54 Md., and CHIEF JUDGES SHAW of Massachusetts, TILGHMAN of Pennsylvania, BRONSON of New York, and THURMAN of Ohio, with JUDGE MILLER of the Supreme Court, are found opposed to that view, it is apparent that the question is one of much difficulty. We think, however, that the view expressed by JUDGE BARTOL must be admitted to be in accord with the principles announced in the earlier cases in this State where trespasses by sheriffs have been considered, and to be

supported by some strong practical considerations of public policy, and we have therefore no disposition to question or weaken its legitimate authority in similar cases. So far as the liability of sureties rests in contract, *as expressed in the condition of the obligation,* we have, in the recent case of *Hill and The Fidelity Co., ante* p. 111, emphasized our continued concurrence in the doctrine that such liability is not to be extended beyond the terms of the obligation. But we do not think the case in 54 Md. can by any fair process of reasoning be made to control the case before us. In that case the Court quotes with approval from *Alcock* v. *Andrews,* 2 Esp. 542, *note,* the distinction drawn by LORD KENYON " between *wrongful acts by an officer done virtute officii* and such as are done *colore officii.*" LORD KENYON says: " The former are where a man, *doing an act within the limits of his official authority, exercises that authority improperly, or abuses the discretion placed in him.* The latter are where the act complained of is of such a nature that the office gives him no authority to do it. In the doing of that act he is not considered an officer." Within the limits of this extract, thus approved by this Court, we think, abundant warrant can be found to maintain this action, and this conclusion, we think, is fortified by authority. If this be not so, then, as was argued in this case, the sheriff is well nigh an irresponsible autocrat, liable indeed officially for his failure to perform some positive duty enjoined for the benefit of the plaintiff in execution, but liable to no one else officially for any wrong he may perpetrate thereunder *virtute officii.* Treating of the duties of a sheriff in executing a writ, JUDGE COOLEY uses the following language: " A sheriff's officer must so execute writs entrusted to him, as to do as little damage as possible to respondent debtors, and where it is *important to the debtor's* business to have the benefit of his exemptions, the officer is bound to act promptly in setting them off to him. In levying, an officer has no right to seize and hold the whole of a debtor's property to satisfy a debt, which, even if all exemptions were allowed, would be more than secured

by the remainder; *and if he thereby precludes the debtor from engaging in his customary business, his action is oppressive and unjustifiable. The officer is, or should be, a minister of justice, and not of oppression."* *Handy* v. *Clippert*, 50 Mich. 355.

The application of the above passage to the case at bar is not less apparent than is the sound common sense of the doctrine which it asserts.

In *Knowlton* v. *Bartlett*, 1 Pick. 274, the action was against the sheriff for the malfeasance of his deputy, and the Court said, " *an official act does not mean what the deputy might lawfully do; if so, no action would ever lie against the sheriff for the misconduct of his deputy."* That is to say, if only lawful acts are official acts, then the sheriff is never responsible for the acts of his deputy, since by a lawful act of the deputy no one can be injured in legal contemplation, while for an unlawful act—since not an official act—the person who is thereby in fact injured, is not permitted to sue the sheriff. It may be that the same rule cannot safely be applied between the sureties and the sheriff, as between the sheriff and his deputy—he and his deputies being regarded in law as one person—but this cannot impair the force of the language employed by the Court to define an official act. We find nothing in 54 Md. inconsistent with this expression of the Court in 1 Pick. On the contrary, we think the language of the opinion, by fair and logical deduction, entirely consistent therewith. JUDGE BARTOL says: " If he commits an act, *not in the discharge of his official duty*, he is personally liable, but his sureties cannot be held responsible therefor; it is not within the terms of their contract." Surely it is a just inference from the above that if he commits a wrongful act *in the discharge of his official duty*, his sureties are responsible, and it is within the terms of their contract. Again, JUDGE BARTOL refers to the dissenting opinion in *People* v. *Schuyler*, 4 Comstock 173, as more satisfactory in its reasoning than the majority opinion in that case by which *ex parte Reed*, 4 Hill 572, was overruled. He also refers approvingly to the reasoning of the able

opinions rendered in *State* v. *Conover*, 28 N. J. L. 224,
which are in accord with 54 Md.    Let us see then how
these opinions thus commended will affect our consid-
eration of the case at bar.    In both these cases the
question before the Court was precisely the same as in
54 Md.    In *People* v. *Schuyler*, JUDGE PRATT, who de-
livered the dissenting opinion, concurred in by two other
judges, using this language : " The question therefore
in this case is not whether the sheriff has not done some
act *colore officii* for which *he* may be liable to an action;
but the question for our consideration is whether the
*declaration shows any misconduct in his office, any want of
fidelity to the trust reposed in him as sheriff or any failure
in his official duty as such by which the plaintiff has suffered
damage.*    The authorities recognize a principle or rule
by which the acts of the sheriff for which his sureties
may be held liable, can be distinguished from those acts
for which they will not be held liable.    The former are
termed acts done *virtute officii*, and the latter *colore officii*.
The distinction is this.    Acts done *virtute officii* are
where they are within the authority of the officer, but in
doing them he exercises that authority improperly or
abuses the confidence which the law reposes in him;
whilst acts done *colore officii*, are where they are of such
a nature that his office gives him no authority to do
them.    This distinction is as old as the common law,
and has been acted upon and recognized in numerous
cases . . . It is based upon correct legal principles and
is supported by abundance of authority.    In the one
case, the inquiry relates entirely to the official conduct
of the officer, whether he has neglected any duty which
the law imposed upon him, or whether in doing any act
which the law requires him to do, he has acted faithfully
and honestly; whilst in the other case, his care, or dili-
gence, or faithfulness, is not a subject of inquiry at all,
the inquiry being limited exclusively to his power or
authority to do the act."

So in *State* v. *Conover*, 28 N. J. L. 224, CHIEF JUDGE
GREEN said : " The complaint against the sheriff is, not
that he did not perform his duty, nor that he performed
it improperly, but that he acted beyond his duty; *that he*

*did an act which neither his writ nor his office authorized him to do, and thereby became liable* as a tort-feasor. . . . *If, on the other hand, the sheriff had been sued by the defendant in the execution for any abuse in the execution of the writ, the conduct of the sheriff in office would be drawn directly in question, and an absence of official malfeasance or misconduct would have constituted a good defence to the action.*"

JUDGE HAINES, who delivered a concurring opinion in 28 N. J. L., says on page 230: " It is a principle long and well established that official acts are those which are ·done by virtue of the office, *such as if properly done,* exculpate both the officer and his sureties from responsibility, but which if neglected, or improperly done, render both liable. If the authority is exceeded, or the duty omitted, an action may be maintained against the officer in his official capacity, and his sureties held responsible. In England no direct authority can be found upon the point, for the reason that the sheriffs there are not required to enter into official bond with sureties, but are required to be of sufficient freehold ability to meet the claims of all parties injured, and are only liable in suits against themselves, or to amercement for· neglect of duty."

So also in *Governor* v. *Hancock,* 2 Ala. 728, which holds with 54 Md., JUDGE GOLDTHWAITE said: " We will not say that the sureties of a sheriff are not liable in some cases of malfeasance, but in such we think the malfeasance must include a misfeasance also; as, for instance, if a sheriff should wantonly destroy property levied on by him, this would be a tortious *act,* but there would likewise be a tortious *omission* of·his duty which is to keep the property safely." It was upon this view that it was held in *Witkouski* v. *Hern,* 82 Cal. 604, that though a constable seized plaintiff's property under a proper writ, yet if he so kept the property while in his custody as that by his carelessness or negligence it was damaged, he and his sureties were responsible for the non performance of his official duty.

We think it is clear upon principle from this review

of the authorities that the plaintiff's action in the case at bar is maintainable and that the decision in 54 Md. was not designed to be, and cannot be, invoked to defeat his recovery. The act which the sheriff did was the act of levying upon the peach crop as a chattel subject to execution. This act his office authorized, and his writ commanded. It was consequently an official act, for which he and his sureties were liable. It was argued in behalf of the appellees that a growing crop of peaches is not the subject of a levy under an execution, and that in levying thereon the sheriff was a trespasser, and the case was thus brought within the principle ruled in 54 Md., but this cannot avail the defendants. It was expressly held in *Purner* v. *Piercy*, 40 Md. 223, " that a growing crop of peaches, or other fruit requiring periodical expense, industry and attention in its yield and production, may be well classed as *fructus industriales* and not subject to the fourth section of the Statute of Frauds "; and it is settled upon satisfactory authority that *fructus industriales* may be taken in execution and sold. The trees or plants are *fructus naturales,* the fruits are *fructus industriales.* 8 *Amer. & Eng. Ency. of Law,* 313 (2nd Edition); *Penhallow* v. *Dwight,* 7 Mass. 34; *Stambaugh* v. *Yeates,* 2 Rawle 161; *Craddock* v. *Riddlesbarger,* 2 Dana 207.

It was also contended that even if subject to levy, no valid levy was in fact made; but in levying upon growing crops, manual possession, concurrent with the making of the levy is impossible, and it is held that proper notification to the party and endorsement on the levy is all that is necessary. 8 *Amer. & Eng. Ency. of Law,* 310; *Barr* v. *Cannon,* 69 Iowa 20.

We think the Circuit Court was in error in granting the defendants' prayer, and for this error the judgment must be reversed and the cause remanded for a new trial.

> *Judgment reversed with costs above and below, and cause remanded for a new trial.*

(Decided December 21st, 1898.)