STATE, use of Isabella Brooks, *vs.* FIDELITY AND
DEPOSIT COMPANY.

*Appeal—After Ruling on Demurrer—Official Bond—Of Sheriff—Acts by Color of Office.*

The time for an appeal is to be counted, not from the ruling on a demurrer, but from the judgment thereon. p. 195

A judgment on demurrer in favor of defendant is an adverse determination of plaintiff's suit from which he has the right of appeal. p. 195

In the case of a judgment in favor of defendant for costs, following the sustaining of a demurrer to the declaration, the appeal is taken from the judgment that the plaintiff has no cause of action, and not from the award of costs. p. 195

The obligation of a surety on an official bond is contractual, and is not to be extended beyond the meaning of its terms, sensibly and reasonably construed. p. 196

The surety on a sheriff's bond is liable for an act done by the sheriff by virtue of the authority of the office, but for an act done merely by color of his office, the surety is not responsible under the terms of the bond. p. 197

An act is done by virtue of an office when one, doing an act within the limits of his official authority, exercises that authority improperly or abuses the discretion placed in him, while an act is done by color of an office if the act is of such a nature that the office gives him no authority to do it. pp. 198, 199

The surety on a sheriff's bond is not liable for the acts of the sheriff in arresting one, without reasonable grounds and without warrant, detaining her in the county jail without any commitment, and maltreating her while there, in the endeavor to make her reveal information, which she did not possess, as to a certain fugitive from justice, such acts being committed by the sheriff not while acting in pursuance of the duties of his office, but in violation of its primary and fundamental inhibitions. p. 199

*Decided January 21st, 1925.*

Appeal from the Baltimore City Court (STUMP, J.).

Action by the State of Maryland, to the use of Isabella Brooks, against the Fidelity and Deposit Company of Maryland. From a judgment on demurrer for defendant, plaintiff appeals. Affirmed.

The cause was argued before URNER, ADKINS, DIGGES, BOND, and PARKE, JJ.

*Horton S. Smith,* with whom were *Smith & Beacham,* and *George L. Pendleton* on the brief, for the appellant.

*Washington Bowie,* for the appellee.

PARKE, J., delivered the opinion of the Court.

A motion has been made by the appellee to dismiss this appeal on the grounds that the appeal was not taken within sixty days counting from the ruling of the court on the demurrer, and that "if the appeal is intended to be from the judgment of March 31st, 1924, the record shows that this judgment was for costs following the judgment sustaining a demurrer, and that such appeal is without merit." It is too late to question that the time for the appeal is counted from the judgment on the demurrer, and not from the ruling of the court; and that the judgment on demurrer was an adverse determination of appellant's suit from which he had the right of appeal. The appeal is not from the award of costs, but from the final judgment that the appellant had no cause of action. *State v. Jenkins,* 70 Md. 472, 478, 479; *Emersonian Apartments v. Taylor,* 132 Md. 210, 215.

The action of the lower court in sustaining the demurrer to appellant's declaration raises the remaining question.

The controlling facts admitted by the demurrer are that, during the occurrence of the matters set forth in the declaration, Charles M. T. Soulsby was the sheriff of Talbot County, with the Fidelity and Deposit Company of Maryland as his surety on a bond conditioned upon the said sheriff's well and

truly performing in all things the duties appertaining to the office that were required by law by the sheriff to be performed; and the breach alleged is that a certain Isaiah Fountain was under a sentence of death and in the sheriff's custody in the jail of Talbot County to be hanged on the 23rd day of July, 1920, when, through the negligence of the sheriff, Fountain made his escape on July 5th, and while the escaped felon was at large, the sheriff, without warrant or commitment, took Isabella Brooks into his custody and imprisoned her for a period of thirty days in the jail of Talbot County, which was in his keep, on the charge of having aided and abetted in the escape of Fountain; and that during this period of confinement and for the purpose of forcing her to disclose to him the hiding place of the convict, and information which would show the manner of his escape, and lead to his re-capture, the sheriff caused the hands and wrists of the appellant to be bound with a strong rope with which she was suspended from the ceiling of the jail, clear of the floor and all other support, and while so hanging was questioned, mistreated and tortured by the sheriff, although the appellant was innocent of any crime and was not possessed of the imputed knowledge.

For the acts set out in the declaration the sheriff was indictable for an offense against the State, and was responsible in a civil action to the appellant for his tort, but whether or not the surety on his official bond was answerable in damages in a separate and distinct proceeding against a third party is a different question which, in Maryland, depends upon whether the wrongs done were within the prescribed statutory condition of, the sheriff's bond that "he shall well and faithfully execute the office of sheriff of" Talbot County, "in all things appertaining thereto, and shall well and truly perform all the duties required by law to be by him performed." Code of Public General Laws, art. 87, sec. 2.

The obligation of a surety on an official bond is contractual and is not to be extended beyond the meaning of its terms, sensibly and reasonably construed. As was said by

this Court, and since consistently applied: "It is familiar
law that the contract of a surety upon an official bond is sub-
ject to the strictest interpretation. They undertake, in the
language of Judge Cooley, 'for nothing which is not within
the strict letter of their contract. The obligation is *strictis-
simi juris,* and nothing is to be taken by construction against
the obligors. They have consented to be bound to a certain
extent only, and their liability must be found within the
terms of that consent.' " *Howard County v. Hill,* 88 Md.
111, at p. 120; *Wilson v. Fowler,* 88 Md. 601, 605; *South-
ern Md. Bank v. National Surety Co.,* 126 Md. 290, 293-294.

An application of this sound canon of construction limits
the liability of the surety to the acts of the sheriff in the exe-
cution of all the duties of his office, whether they arise at
common law or are imposed by statute. This is indicated by
the form of the bond that the Legislature has specified under
the mandate of the Constitution, and by the further provi-
sion that if the sheriff's annual bond should not be regularly
filed before January first, but be filed within the ninety days'
period of grace following the first day of January, it shall
contain the condition that the obligors of the bond shall be
"responsible also for all official acts of said sheriff committed
or done by him from the said first day of January up to the
date of the filing of the said bond as well as thereafter."
Constitution of Maryland, art. 4, sec. 45; Code, art. 87,
secs. 2, 4. The surety's obligation, therefore, is co-extensive
with the duties of the sheriff's office, but does not extend be-
yond this single limitation on the scope of the bondsman's
contractual liability. In the ascertainment of whether the
wrong complained of is within the stipulations of the bond,
the Maryland rule, which was adopted after careful consid-
eration of the opposite view and of the authorities support-
ing it, is that if the act is done by virtue of the authority of
the office the surety is liable, but if the thing committed is
merely by color of his office, the surety is not responsible
under the terms of the bond. *State, use of Vanderworker, v.
Brown et al.,* 54 Md. 318, 324-326; *State v. Timmons,* 90

Md. 10, 12; *State, use of Williams, v. Dayton,* 101 Md. 598; *Wilson v. Fowler,* 88 Md. 601, 604-609; *Cocking v. Wade,* 87 Md. 529, 542.

The rule thus laid down in *State, use of Vanderworker, v. Brown et al.,* 54 Md. 318, was under review in *Wilson v. Fowler,* 88 Md. 601, where this Court, after again weighing the conflicting views of the courts of other jurisdictions, re-affirmed its own doctrine and said: "In *Lammon v. Feusier,* 111 U. S. 17, where a conclusion was reached different from that of 54 Md., many of the cases were cited and reviewed. When such eminent judges as Chief Judge Green of New Jersey, Judge Cowen of New York, and Judge Ruffin of North Carolina, are found in accord with the view expressed in 54 Md., and Chief Judges Shaw of Massachusetts, Tilghman of Pennsylvania, Bronson of New York, and Thurman of Ohio, with Judge Miller of the Supreme Court, are found opposed to that view, it is apparent that the question is one of much difficulty. We think, however, that the view expressed by Judge Bartol must be admitted to be in accord with the principles announced in the earlier cases in this State when trespasses by sheriffs have been considered, and to be supported by some practical considerations of public policy, and we have, therefore, no disposition to question or weaken its legitimate authority in similar cases." The subsequent cases cited in briefs on this appeal bring nothing to the controversy but the weight of repetition.

In the later cases of *State v. Timmons,* 90 Md. 10, and of *State, use of Williams, v. Dayton,* 101 Md. 598, the accepted Maryland view was again recognized and applied, and nothing remains for the Court but to enforce, with its full approval, the established rule of this tribunal. The criterion, therefore, of the surety's liability is whether the wrongful acts by the sheriff were done *virtute officii* or *colore officii.* The former are "where a man doing an act within the limits of his official authority exercises that authority improperly, or abuses the discretion placed in him. The latter are where the act committed is of such nature that the office gives him

no authority to do it; in the doing of that act he is not to be considered as an officer." *Supra.*

According to the admitted averments of the declaration, the sheriff, without reasonable grounds to suspect that Isabella Brooks was accessory in any way to the escape of Fountain or had any information to impart that might lead to his recapture, arrested her without warrant, and did not take her at all before a magistrate for her there to be dealt with comformably to law, according to the exigency of the case, but imprisoned and detained her, without commitment, for thirty days in the county jail, where she was questioned and tortured to make her reveal information, which she did not possess, in reference to the escape, flight and refuge of Fountain. 1 *Bishop on Crim. Law,* secs. 181-183; *Mitchell v. Lemon,* 34 Md. 176, 181; *Kirk & Sons v. Garrett,* 84 Md. 380, 405, 407; Code, art. 87, sec. 44.

These acts were unjustifiable, and in the commission of them the sheriff was neither executing a writ nor was he acting in pursuance of the duties of his office, but in clear and unmistakable violation of its primary and fundamental inhibitions. He is disclosed as a trespasser *vi et armis* from the start, and as such, but not in his official character, an action lies against him. As was said of this bond in *Cocking v. Wade,* 87 Md. at p. 544: "There is no clause to cover an abuse or usurpation of power—no negative words that he will commit no wrong by color of his office, nor do anything not authorized by law."

In our view of the case the judgment of the lower Court will be affirmed.

> *Motion to dismiss appeal denied, with the costs of the motion to the appellant; and judgment affirmed, with other costs to the appellee.*