## MARYLAND CASUALTY CO. v. ALFORD
### (two cases).
### No. 1946.

Circuit Court of Appeals, Tenth Circuit.
April 5, 1940.

Rehearing Denied May 22, 1940.

HUXMAN, Circuit Judge, dissenting.

W. E. Green and Robert J. Woolsey, both of Tulsa, Okl. (J. C. Farmer, of Tulsa, Okl., on the briefs), for appellant.

John M. Goldesberry, of Tulsa, Okl. (Gerald B. Klein, of Tulsa, Okl., Gaylord R.Wilcox, of Sapulpa, Okl., and Johnson & Jones, of Bristow, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is an action brought by Earl D. Alford, as administrator of the estate of Frederick W. Weidman, deceased, against Dave McConnell and the Maryland Casualty Company, hereinafter referred to as the Casualty Company. From a judgment for $5,584.52 against McConnell and the Casualty Company, the Casualty Company has appealed.

In a companion case brought by Alford, as administrator of the estate of Mamie M. Weidman, deceased, against McConnell and the Casualty Company and in the trial court consolidated with the instant case, a verdict for $5,378.31 was returned against McConnell and the Casualty Company. From a judgment on that verdict, the Casualty Company also appealed. The latter appeal is numbered 1947 on our docket.

After the appeals reached this court, it was stipulated that they should be consolidated and that the decision in the instant case should govern the decision in 1947.

McConnell was superintendent of the Bureau of Criminal Identification and Investigation. The Bureau has its office in the State Capitol at Oklahoma City, Oklahoma. It was created by ch. 127, O.Sess. Laws 1925, §§ 4731–4748, O.S.1931, 74 Okl. St.Ann. §§ 131–148, which provides that

the Bureau shall consist of a superintendent, an assistant superintendent, three investigators, and a clerical staff; that the superintendent shall execute a bond to the state in the sum of $10,000, "conditioned for the faithful performance of his duties"; and that members of the Bureau are authorized and empowered to make arrests without warrants for violations of law committed in their presence, to serve and execute warrants issued by proper local authority, to exercise throughout the state the powers of sheriffs, constables, and municipal police officers, and to cooperate with county and municipal officers in the detection of crime, the apprehension of criminals, and the preservation of law and order throughout the state.

In accordance with the statutory requirement, McConnell, as principal, and the Maryland Casualty Company, as surety, executed an official bond to the state in the penal sum of $10,000. Both actions sought recovery on the bond.

The amended petition in the instant case contained three causes of action. On the first cause of action, recovery was sought for the wrongful death of Weidman. The second cause of action was dismissed. On the third cause of action, recovery was sought for injury to Weidman's automobile and for funeral expenses.

In the latter part of May, 1935, McConnell was detailed to investigate a mining strike at Pitcher and Miami, Oklahoma. Having completed his duties at Pitcher and Miami, he left Miami to return to his office at Oklahoma City. Other members of the Bureau in his charge accompanied him. They traveled in two automobiles. McConnell's automobile was the lead car. It was the practice of officers of the Bureau to return to the office of the Bureau in the Capitol when they had completed their duties at outlying points in the state. McConnell was transporting in his automobile to the office of the Bureau at Oklahoma City certain guns, ammunition, hand grenades, and other paraphernalia belonging to the Bureau.

At a point near Bristow a collision occurred between the McConnell and Weidman automobiles, resulting in the death of Frederick W. Weidman and Mamie M. Weidman. The evidence established negligence on the part of McConnell in that he was driving at an excessive rate of speed and that he drove across the center line over on to Weidman's side of the road im-

mediately prior to the accident, and that such negligence on his part was the proximate cause of the injuries to and the death of the Weidmans.

■ Under the weight of authority, a peace officer is liable on his official bond for wrongful acts done under color of his office.[1] Some jurisdictions limit the liability to acts done by virtue of office.[2] Oklahoma has adopted the broader rule. See McCorcle v. Morton, 171 Okl. 632, 44 P.2d 9.

In Meek v. Tilghman, 55 Okl. 208, 154 P. 1190, 1191, the court said:

"The defendants cite numerous authorities to the effect, that a peace officer's bondsmen are not liable for extra-official acts, and that before the bondsmen can be held liable it is necessary to allege and prove that the unlawful act was done under the color of office and while acting in the general line of his official duties. That is, we think, the correct rule, * * *".

■ Under the test laid down in the Meek case McConnell at the time of the accident was engaged in the performance of official duties and was acting under color of his office. He was not merely returning from Miami, where he had gone with his men to investigate the strike, to his office at Oklahoma City, but he was in charge of his men and was transporting to the office at Oklahoma City, property belonging to the Bureau. For these reasons, the instant case is distinguishable from Clement v. Dunn, 114 Cal.App. 60, 299 P. 545; Usrey v. Yarnell, 181 Ark. 804, 27 S.W.2d 988; McVea v. Day, 6 La.App. 382; Humphrey v. Ownby, Mo.App., 104 S.W.2d 398, relied on by counsel for the Casualty Company.

In transporting the property of the Bureau back to the Oklahoma City office, McConnell was acting officially and when, while so engaged, he drove his automobile negligently, he was acting under color of his office. True, in driving negligently he acted improperly. But if the fact that acts done under color of office were improper would excuse liability on the officer's official bond, it would never arise. See Brown v. Weaver, 76 Miss. 7, 23 So. 388, 42 L.R.A. 423, 71 Am.St.Rep. 512, cited with approval in Meek v. Tilghman, supra.

It is our conclusion, therefore, that the Casualty Company is liable on the bond for the wrongful death of Weidman and the damages to the Weidman automobile.

Section 95, O.S.1931, 12 Okl.St.Ann. § 76, in part reads as follows:

"When an officer, executor or administrator within this State, by misconduct or neglect of duty, forfeits his bond or renders his sureties liable, any person injured thereby, or who is, by law, entitled to the benefit of the security, may bring an action thereon in his own name, against the officer, executor or administrator and his sureties, to recover the amount to which he may be entitled by reason of the delinquency. * * *"

Section 96, O.S.1931, 12 Okl.St.Ann. § 77, reads as follows:

"A judgment in favor of a party for one delinquency does not preclude the same or another party from an action on the same security for another delinquency."

Section 9626, O.S.1931, 15 Okl.St.Ann. § 373, reads as follows:

"A surety cannot be held beyond the express terms of his contract, and if such contract prescribes a penalty for its breach, he cannot in any case be liable for more than the penalty."

■ Under the great weight of authority, a surety's liability is limited by the penal sum named in the bond, even though

---

[1] Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794, 800;

Gray v. Noonan, 5 Ariz. 167, 50 P. 116, 118;

Jefferson v. Hartley, 81 Ga. 716, 9 S.E. 174, 175;

Greenberg v. People, 225 Ill. 174, 80 N. E. 100, 8 L.R.A.,N.S., 1223, 116 Am. St.Rep. 127;

State v. Walford, 11 Ind.App. 392, 39 N.E. 162;

Kosowsky v. Fidelity & Deposit Co., 245 Mich. 266, 222 N.W. 153;

People v. Mersereau, 74 Mich. 687, 42 N.W. 153, 154;

Hall v. Tierney, 89 Minn. 407, 95 N.W. 219, 220;

Lee v. Charmley, 20 N.D. 570, 129 N. W. 448, 449, 33 L.R.A.,N.S., 275;

Stephenson v. Sinclair, 14 Tex.Civ.App. 133, 36 S.W. 137;

Jahns v. Clark, 138 Wash. 288, 244 P. 729, 731, 732.

[2] State v. Fidelity & Deposit Co., 147 Md. 194, 127 A. 758, 759;

Huffman v. Koppelkom, 8 Neb. 344, 1 N.W. 243.

See, also, Bassinger v. United States Fidelity & Guaranty Co., 8 Cir., 58 F. 2d 573.

different individuals assert claims based upon distinct wrongful acts of the principal.[3]

Oklahoma has not construed § 96, supra, but the Court of Appeals, in Southern Surety Co. v. Bender, 41 Ohio App. 541, 180 N.E. 198, in construing a substantially identical statute of Ohio, held that the aggregate liability of the surety is limited to the penal sum named in the bond.

We conclude, therefore, that as against the Casualty Company the two judgments should have been limited to $10,000.

The court instructed the jury in part as follows:

"And you will award such damages in each case as you find from all the facts and circumstances as will compensate the plaintiff for the use and benefit of the next of kin, that is, in the first causes of action pleaded in the petition, for the loss that they have sustained by reason of the death of their father and mother, the next of kin being the two daughters. * * *

"You may also, in fixing the amount of damages, take into consideration the mother's moral training, teaching and support commensurate to the things that she would have contributed toward these minor children during her life expectancy. You know a mother sometimes contributes more than a pecuniary support to minor children, but the law permits the moral effect upon their general character to be considered in determining the amount of damages you will award so far as the mother's death is concerned, * * *."

The correctness of the latter instruction is challenged on the ground that it authorized the jury to award damages other than for pecuniary loss.

Under the stipulation this instruction is not open to review. Furthermore, it is our view that the instruction is not erroneous. The courts recognize that the loss of nurture, and intellectual, moral, and physical training, which a child suffers due to the death of a parent, is a pecuniary loss,[4] measured by what it would cost to secure such nurture and training from others.

The effect of the instruction when read in the light of the previous instruction was to advise the jury that in arriving at the loss due to the death of the mother, in addition to loss of support it could take into consideration loss of moral training and teaching.

Had counsel for the Casualty Company challenged the instruction on the ground that it laid down no standard for measuring the loss of nurture, moral and intellectual training, or requested the court to instruct the jury that such loss should be measured by the cost of obtaining such nurture and training from others, a different situation would be presented. But no such challenge was presented nor was any such instruction requested.

In cause No. 1946, if, within 40 days from the date of the filing of this opinion, the administrator files a remittitur of $490.47 with the clerk of the trial court and within 10 days thereafter files with the clerk of this court a certified copy of the record showing such remittitur, the judgment shall stand affirmed; otherwise, it shall be reversed and the cause remanded with directions to grant the Casualty Company a new trial.

In cause No. 1947, if, within 40 days from the date of the filing of this opinion, the administrator files a remittitur of $472.36 with the clerk of the trial court and within 10 days thereafter files with the clerk of this court a certified copy of the record showing such remittitur, the judgment shall stand affirmed; otherwise, it

---

[3] See Wiggins v. Pacific Indemnity Co., 134 Cal.App. 328, 25 P.2d 898, 900, 901;

New Amsterdam Casualty Co. v. Hyde, 148 Or. 229, 34 P.2d 930, 933, 35 P.2d 980;

United States F. & G. Co. v. Zidell-Steinberg Co., 151 Or. 538, 50 P.2d 584, 591, 51 P.2d 687;

Witter v. Massachusetts Bonding & I. Co., 215 Iowa 1322, 247 N.W. 831, 833, 834, 89 A.L.R. 1065;

Fidelity & Deposit Co. v. Sholtz, 123 Fla. 837, 168 So. 25, 31, 32;

Southern Surety Co. v. Bender, 41 Ohio App. 541, 180 N.E. 198;

Cantrell v. National Surety Co., 46 Ga. App. 202, 167 S.E. 314.

Contra, see Salo v. Pacific Coast Casualty Co., 95 Wash. 109, 163 P. 384, L. R.A.1917D, 613;

Nelson v. Pacific Coast Casualty Co., 96 Wash. 43, 164 P. 594;

Commercial State Bank v. Palmerton-Moore Grain Co., 152 Wash. 89, 277 P. 389.

[4] See Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 73, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas.1914C, 176;

Belford v. Allen, 183 Okl. 256, 80 P. 2d 671.

shall be reversed and the cause remanded with directions to grant the Casualty Company a new trial.

HUXMAN, Circuit Judge (dissenting).

I find myself unable to agree with the conclusion reached in Case No. 1947. One of the assignments of error in this case challenges an instruction relating to the measure of damages. The challenged instruction is set out in full in the majority opinion and will not be repeated here. I cannot give my adherence to the interpretation placed on this instruction in the majority opinion. The difficulty with the challenged instruction is that it does not confine itself to the pecuniary loss suffered by the children as a result of being deprived of the mother's moral instruction, but deals with the effect of that loss upon their general character. The loss suffered by being deprived of the moral teaching of the mother is a proper element of damages. The measure of that damage is the cost incurred in providing the training the mother would have furnished. The effect, however, of the loss of that moral training upon the general character of the children is not a proper element of damage. It is incapable of being measured; it cannot be translated into dollars and cents.

Nor can I agree that the effect of the instruction, when read in connection with the other instructions, is that, in addition to other loss suffered, the pecuniary loss of the moral training can be recovered. In the first part of the instruction, the court says: "You may also, in fixing the amount of damages, take into consideration the mother's moral training, teaching and support, commensurate to the things that she would have contributed toward these minor children during her life expectancy." Had the court stopped here, there would be no difficulty. If the instruction in general terms means that the jury could allow recovery for the cost of providing for the moral instruction, nothing more need have been added. But the court proceeds to say: "You know a mother sometimes contributes *more than a pecuniary support to minor children, but the law permits the moral effect upon their general character to be considered in determining the amount of damages you will award * * *."* (Italics supplied.)

The conjunction "but" is used to express a thought in opposition to that expressed in a preceding sentence or clause. Used as a conjunction it means "something more" or "otherwise." That seems to me to be the meaning it must be accorded here. Thus interpreted, the sentence can be said to mean, "Yet something more than pecuniary loss the law permits you to consider. It permits you to consider the effect of the loss of the mother's moral training upon the general character of the children."

Counsel for appellant challenged the instruction by timely objection thereto and also in its motion for a new trial. Under Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that was all it was required to do to make available the point on appeal.

I do not feel that the two stipulations dealing with the consolidation of the two cases on appeal bar appellant from urging the point. When fairly construed, the intent of the stipulations was to make unnecessary the printing of two records in these two cases on appeal. The intent was that the cases should be considered on one record, and, the main question involved being the liability of appellant on the bond, that the decision in the one case should be controlling in both.

Aside from the stipulation, the appellate court has inherent power to review the case upon the whole record and make such disposition as justice requires. Patterson v. Alabama, 294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082; State Tax Commission v. Van Cott, 306 U.S. 511, 59 S.Ct. 605, 83 L.Ed. 950; Minnesota v. National Tea Co. & Allied Stores, 60 S.Ct. 676, 84 L.Ed. ——, decided March 25, 1940; Trapp v. Metropolitan Life Ins. Co., 8 Cir., 70 F.2d 976; Walsh v. Segale, 2 Cir., 70 F.2d 698.

The challenged instruction is not clear. The jury could easily have become confused and misled by the instruction in its consideration of the elements for which damage should be allowed.

I think Case Number 1947 should be reversed, and the cause remanded with instructions to grant a new trial.