### STATE OF MINNESOTA vs. A. G. WEDGE.

September 22, 1877.

**Malfeasance in Office—Approval of Bail Bond by County Attorney—Indictment.**
Pugh was under arrest upon an indictment in Freeborn county. There was also a complaint before a justice of the peace in Mower county, charging him with a criminal offence in that county. This indictment charges that the defendant, who was county attorney of Freeborn county, wilfully and corruptly, and with a design to aid Pugh in escaping from

the charge in Mower county, and any warrant that might issue thereon, indorsed on a bond executed by Pugh and sureties, conditioned for his appearance to answer the indictment under which he was in arrest, an approval thereof, and a direction to the officer having Pugh in charge to release him on receipt of the bond; and with such corrupt motives delivered the bond to Pugh's attorneys; and that, in consequence, Pugh did escape arrest on the charge in Mower county. *Held*, that the approval and direction on the bond, were beyond defendant's official authority, and, if done corruptly, constitute misbehavior in office. An officer who corruptly does an act beyond his authority, assuming to act officially and under his official designation, in such manner as is likely to deceive and mislead others, is guilty of misbehavior in office. Also, that this indictment need not show that Pugh was guilty of the offence charged in Mower county, nor that the complaint against him, for that offence, was technically sufficient.

Case certified by the district court for Freeborn county, *Page*, J., presiding.

*John A. Lovely*, for plaintiff.

*Stacy & Tyrer*, for defendant.

GILFILLAN, C. J. Demurrer to indictment. The indictment is for misbehavior and malfeasance in office. Defendant was county attorney of Freeborn county. It appears from the indictment that one Pugh was in the custody of an officer, upon arrest under an indictment found by the grand jury of Freeborn county, also that a complaint upon a criminal charge had been duly made against Pugh before a justice of the peace in the county of Mower, of which complaint the defendant well knew. No warrant appears to have been issued on this latter charge.

The alleged misbehavior or malfeasance in office is that defendant wrongfully, wilfully and corruptly, and with a design to aid and assist Pugh to escape and avoid being arrested upon the latter criminal complaint, and upon any warrant that might be issued thereon, indorsed upon a bond executed by Pugh and two sureties, conditioned for his appearance at the next general term of the district court in Freeborn county, to answer to the indictment under which he was in arrest, an approval and direction as follows:

"I hereby approve of the within bond, and direct that the

officer in charge of the within named Pugh to release him on receipt of this bond.

"Dated May 5, 1875.

"A. G. WEDGE,

"County Attorney, Freeborn county, Minnesota."
—and that he did wrongfully, unlawfully, wilfully and corruptly, and for the purpose and with the design aforesaid, deliver said bond, with said approval and direction written thereon, to the attorneys of Pugh, for the purpose of enabling them to deliver the same to the officer who had Pugh in custody, and thus procure his release from such custody at such time and place as would enable Pugh to escape and avoid being arrested upon the charge against him in Mower county, or upon any warrant that might be issued thereon; that said bond, with defendant's knowledge, was delivered to the officer while he was conveying Pugh to jail, and Pugh was released from arrest and escaped, and avoided being arrested under the criminal complaint in Mower county. It is not alleged that the bond was insufficient in amount or form to secure the presence of Pugh in court to answer to the indictment under which he was in arrest.

The demurrer was on the ground that the acts charged do not constitute a public offence. One objection made to the indictment is, that it does not show that the complaint in Mower county stated sufficient to constitute a public offence. The defendant is not indicted as an accessory after the fact to the crime charged in Mower county. If he were, the fact that Pugh had committed an offence in that county, and defendant's knowledge of the fact, would be essential ingredients of the crime alleged against him. In this indictment the reference to the complaint in Mower county is matter of inducement to show a corrupt motive for the alleged unlawful act of giving, so far as he could, the sanction of his official position to an excess or usurpation of authority. So far as showing a corrupt motive is concerned, the guilt or innocence of Pugh, and the technical sufficiency or insufficiency of the

complaint against him, are immaterial. It is enough that proceedings had been instituted against him upon a charge of crime, and that it does not appear that those proceedings were wholly void. *People* v. *Coon,* 15 Wend. 277. Defendant had no right to do an unlawful act with intent to forestall the decision of the justice before whom the complaint was made, or to prevent Pugh being taken before the justice so that the sufficiency of the complaint, and its truth or falsity, might be determined.

How a defendant, arrested under an indictment, shall be let to bail, is prescribed by the statute. It gives no authority in the matter to the county attorney. Perhaps, when the court has directed what the bail shall be, it may authorize him to determine whether its directions have been complied with. If there was such authority from the court in this case, it must be made to appear as matter of defence. It cannot be presumed. The approval of the bond, and direction to the officer to release the prisoner, were beyond the defendant's official authority. The question in the case comes to this: Is an officer who, with a corrupt motive, does an act beyond his lawful authority, assuming to act officially and under his official designation, in such manner as is likely to deceive and mislead others, guilty of misbehavior or malfeasance in office? We think that he is—that it is as much his duty as an officer to refrain from corruptly usurping or assuming powers not pertaining to his office, as to refrain from corruptly exercising those which properly belong to it. Such usurpation may be productive of the same mischiefs to the public which the statute punishing misbehavior and malfeasance in office aims to prevent, and where such mischiefs may accrue to the public the act comes within its spirit and intent. That defendant did the act alleged, under color of his office, and with a corrupt motive, is charged in the indictment. The act produced the result intended by him. That it was well calculated to deceive and mislead the officer who had charge of the prisoner, and to bring about the release, there can be no doubt. The county attorney is the legal adviser of the county, and of

all its officers, in relation to their official duties, and has charge and the conduct of all criminal prosecutions in the district courts. Gen. St. *c.* 8, § 18. Standing in this relation, his advice or suggestion to an officer having a person charged with crime in his custody, and especially a formal direction, under his signature and official designation, indorsed on a bail bond approved by him, to release such person, would be most likely to produce such release. Few sheriffs are so well informed of their duties and of the authority of the county attorney as to know that such an approval and direction are null. Most of such officers would be misled into releasing the prisoner as directed.

The case of the *State* v. *Coon*, 14 Minn. 459, is very different from this one: The question in that case was, whether the defendant, who was a justice of the peace, was guilty of misbehavior in office, by corruptly advising a plaintiff, who had recovered a judgment before him, to sell such judgment. The giving advice in such matters was clearly beyond the scope of his official duty, and it did not appear that he had assumed to give the advice as justice of the peace, nor was it evident how he could give such advice the appearance of an official act, and the court said: "The defendant could not, in his official character, advise Klein to sell the judgment. It is not his official duty to give advice on such matters. A party has no right to ask it, nor rely upon it, except as he would ask the advice of a private person." The only case we have been able to find analogous to this is *State* v. *Leach*, 60 Maine, 58. That was an indictment against a register of deeds for misconduct in office—the misconduct consisting in his having knowingly made, under his title of office, and delivered, a false certificate of examination, and as to the title to a lot of land, and it was held that the indictment would lie, although it was no part of his official duty to make such examination or issue such certificate.

The demurrer to the indictment was properly overruled, and the case will be remanded to the court below for further proceedings.