JOHN J. LEE, as Sheriff of Ward County, North Dakota, v. JOHN CHARMLEY and V. J. Winset and A. E. Paulson.

(— L.R.A.(N.S.) —, 129 N. W. 448.)

**Officers — Sheriff and Constables — Official Bonds.**

1. The sureties upon the official bond of a deputy sheriff, who undertake that

---

Note.—While a police officer who makes an arrest on a reasonable suspicion of felony and in good faith will not be liable although no felony has in fact been com-

he shall faithfully and impartially discharge the duties of his office, are liable for any unlawful or oppressive act done by such officer, under color or by virtue of his office.

**Officers — Liability on an Official Bond.**

2. The purpose of an official bond is to provide indemnity against malfeasance and misbehavior in public office, the misuse of powers belonging to the office, and the assumption under guise of official action of powers not belonging to it. All acts so performed, though unlawful or wrongful, are official acts within the meaning of an undertaking that an officer shall faithfully and impartially discharge the duties of his office; and as such may be reasonably considered to have been within the contemplation of the sureties, at the time they entered into the undertaking, as constituting a breach of its conditions.

**Sheriffs and Constables — Liability on Official Bond.**

3. A deputy sheriff who falsely claiming to have a warrant for the arrest of a person not formally charged with crime of any kind goes to his house in the nighttime and under guise of the authority of his office arrests and takes such person into custody, has committed an unauthorized and unlawful act under color of his office, for which the sureties upon his official bond are liable in a proper action.

Opinion filed December 31, 1910.

Appeal from District Court, Ward county; *E. B. Goss*, J.

Action by John J. Lee as sheriff of Ward county against John Charmley and others upon the official bond of defendant Charmley as deputy sheriff. From an order overruling a demurrer to plaintiff's complaint, defendant's sureties appeal.

Affirmed.

*Murphy & Wooledge*, for appellants.

"Color of office" implies presence of apparent real authority. State, Allen, Prosecutor, v. Conover, 28 N. J. L. 224, 78 Am. Dec. 54; Taylor v. Parker, 43 Wis. 78; Gerber v. Ackley, 32 Wis. 233, 37 Wis. 43,

---

mitted, it is well established, as shown by a review of the authorities in a note in 51 L.R.A. 203, that he will be liable if he has not such reasonable grounds for believing that a felony has been committed, or if he acts in bad faith or oppressively. And the general rule is, as shown by the authorities in 51 L.R.A. 222, that an action may be maintained on the officer's bond for making an unlawful arrest if the wrongful acts are done by virtue of his office, although there is a conflict of authority as to liability on the bond for wrongful acts done by color of his office. In some cases the liability is controlled by statute.

19 Am. Rep. 751; Kendall v. Aleshire, 28 Neb. 707, 26 Am. St. Rep. 367, 45 N. W. 167; Marquis v. Willard, 12 Wash. 528, 50 Am. St. Rep. 906, 41 Pac. 889; Huffman v. Koppelkom, 8 Neb. 344, 1 N. W. 243; Ottenstein v. Alpaugh, 9 Neb. 237, 2 N. W. 219; State use of Wilson v. Fowler, 88 Md. 601, 42 L.R.A. 849, 71 Am. St. Rep. 452, 42 Atl. 201; Feller v. Gates, 40 Or. 543, 56 L.R.A. 630, 91 Am. St. Rep. 492, 67 Pac. 416; Greenberg v. People, 225 Ill. 174, 8 L.R.A. (N.S.) 1223, 116 Am. St. Rep. 127, 80 N. E. 100; McLendon v. State, 92 Tenn. 520, 21 L.R.A. 738, 22 S. W. 200; State ex rel. Bruns v. Clausmeier, 154 Ind. 599, 50 L.R.A. 73, 77 Am. St. Rep. 511, 57 N. E. 541; Leger v. Warren, 62 Ohio St. 500, 51 L.R.A. 193, 78 Am. St. Rep. 738, 57 N. E. 506; Brown v. Wallis, 100 Tex. 546, 12 L.R.A. (N.S.) 1019, 101 S. W. 1070; Allison v. People, 6 Colo. App. 83, 39 Pac. 903; Palmer v. St. Albans, 60 Vt. 427, 6 Am. St. Rep. 131, 13 Atl. 569; State ex rel. Russell v. Hendricks, 88 Mo. App. 560; Dysart v. Lurty, 3 Okla. 601, 41 Pac. 724; San Luis Obispo County v. Farnum, 108 Cal. 562, 41 Pac. 445.

Sureties on an officer's bond guarantee strictly official conduct and no more. Feller v. Gates, 40 Or. 543, 56 L.R.A. 630, 91 Am. St. Rep. 492, 67 Pac. 416; Gerber v. Ackley, 32 Wis. 233, 37 Wis. 43, 19 Am. Rep. 751; Kendall v. Aleshire, 28 Neb. 707, 26 Am. St. Rep. 367, 45 N. W. 167; Marquis v. Willard, 12 Wash. 528, 50 Am. St. Rep. 906, 41 Pac. 889; State use of Wilson v. Fowler, 88 Md. 601, 42 L.R.A. 849, 71 Am. St. Rep. 452, 42 Atl. 201; State use of German v. Timmons, 90 Md. 10, 78 Am. St. Rep. 420, 44 Atl. 1003; Prairie School Twp. v. Haseleu, 3 N. D. 328, 55 N. W. 938; and Mechem, Pub. Off. §§ 282, 283.

*John E. Greene, R. H. Bosard,* and *G. W. Twiford,* for respondents.

Acts done under the color of office are within the protection of an official bond. Murfree, Official Bonds, § 211; Clancy v. Kenworthy, 74 Iowa, 740, 7 Am. St. Rep. 508, 35 N. W. 427; Hall v. Tierney, 89 Minn. 407, 95 N. W. 219; Turner v. Sisson, 137 Mass. 191.

ELLSWORTH, J. The action in which this appeal is taken is brought by the plaintiff as sheriff of Ward county against defendant Charmley, as a deputy sheriff, appointed by him and the other defendants as sureties upon the deputy's bond. The conditions of the bond as

set out in the complaint are to the effect that, "if the said John Charmley shall faithfully and impartially discharge the duties of said office of deputy sheriff, and render a true account of all moneys and property of every kind that shall come into his hands as such officer, and pay over and deliver the same according to law, then the above obligation to be void," etc. Then follows an allegation in these words: "That on or about the 8th day of July, 1905, at or about the hour of 11:30 P. M., in the nighttime, in the city of Kenmare, Ward county, North Dakota, the defendant, John Charmley, as deputy sheriff, did go to the home of one Edward J. Brown, and did, as deputy sheriff, wrongfully, unlawfully and without reasonable cause or authority of law place under arrest and take into custody the said Edward J. Brown; that said John Charmley, as deputy sheriff, at the time said arrest was made, had no warrant for the arrest of said Edward J. Brown, nor was there at such time any complaint filed charging the said Edward J. Brown with a crime, nor was any crime committed by the said Edward J. Brown; that the said John Charmley, as deputy sheriff, represented at the time said arrest was made that he had a warrant for the arrest of Edward J. Brown, which statement was false, and the said John Charmley compelled the said Edward J. Brown to accompany him, as such deputy sheriff, and as such deputy sheriff took him into custody; that said acts were a violation of the duties of said John Charmley, as deputy sheriff, and by reason thereof the said John Charmley did not faithfully and impartially perform his duties as deputy sheriff in the premises; that such acts were in violation of the conditions of the bond of said John Charmley as deputy sheriff hereinbefore set forth, for the faithful performance of his duties as such deputy sheriff."

Then follows allegations to the effect that, by reason of said unlawful acts of defendant Charmley, the plaintiff, as sheriff of Ward county, was sued by said Edward J. Brown, and a judgment recovered against him by said Brown in the sum of $652.65; that the defendant sureties were duly notified to come in and defend said action, and that one of them appeared and took some steps in the procedure; that the plaintiff was compelled to pay the amount of said judgment, and to expend large sums of money in the defense of said action, to his damage in

the aggregate in the sum of $906.65, for which sum he demands judgment against defendants.

The defendant sureties appeared and jointly interposed a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action against them. A trial upon the issues of law presented by this demurrer was had before the district court of Ward county, which made an order overruling the demurrer. From this order of the district court the sureties have appealed to this court.

. The only point, therefore, presented by this appeal or urged in this court is that based upon the contention of appellant's counsel, that the complaint does not state a cause of action against appellant sureties, for the reason that the facts set forth in the complaint do not, though admitted, constitute such a breach of the official bond given by defendant Charmley as deputy sheriff, as to render liable the appellants as sureties; that the complaint negatives the conclusion that the acts complained of were the official acts of the deputy sheriff, or that he acted under "color of office," and, on the contrary, show that he was a mere private trespasser.

The courts, in their consideration of those acts of public officers which result in liability to the sureties upon their official bonds, have found it convenient to divide such acts into three distinct classes: (1) Acts done by virtue of office; (2) acts done under color of office; and (3) acts done in a purely private or individual capacity. By an absolute agreement of authority, the sureties upon an official bond are liable for wrongful acts within the first class, and are not liable for those of the third class. Regarding those acts falling within the second class there has been for generations an irreconcilable conflict of authority. We are cited to long lines of cases in which the holding of liability or nonliability of the sureties is based entirely upon the distinction between acts done *virtute officii* and *colore officii,* the courts of many different states having announced holdings that are diametrically opposed. The learned discussions contained in the opinions handed down in these cases are interesting, and serve admirably to accentuate the remark of the supreme court of Maryland, that when authorities so eminent as Chief Justice Green of New Jersey, Judge Cowen, of New York, and Judge Ruffin, of North Carolina are found in accord with one principle of liability, and Judge Shaw of Massachusetts,

Tilghman of Pennsylvania, Bronson of New York, Thurman of Ohio, and Justice Gray of the Supreme Court of the United States, are committed to the opposite view, "it is apparent that the question is one of much difficulty." State use of Wilson v. Fowler, 88 Md. 601, 42 L.R.A. 849, 71 Am. St. Rep. 452, 42 Atl. 201.

The distinction made between the official acts that serve as the basis of these conflicting lines of authority is that "acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly or abuses the confidence which the law reposes in him; while acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them." Brandt, Suretyship, 3d ed. § 690; Gerber v. Ackley, 37 Wis. 43, 19 Am. Rep. 751; People ex rel. Kellogg v. Schuyler, 4 N. Y. 187. Under the rule of the common law adopted by the courts of New York, New Jersey, North Carolina, and Wisconsin, the sureties upon an official bond were held liable only for wrongful acts of the officer done *virtute officii*. Acts done *colore officii* within the meaning of the definition above quoted were classed as unofficial acts, in doing which the officer was a mere trespasser and for which the sureties were not bound. State, Allen, Prosecutor, v. Conover, 28 N. J. L. 224, 78 Am. Dec. 54.

The almost uniform current of the later cases, however, regards wrongful acts of a public officer *colore officii* as official acts, for which the sureties upon his bond are liable. Such is the holding of the courts of last resort of Pennsylvania, Maine, Massachusetts, Ohio, Virginia, Kentucky, Missouri, Iowa, Nebraska, Texas, California, Minnesota, Illinois, and of the Supreme Court of the United States. And, in reviewing these authorities, this court in one of its former opinions has remarked, "While there is a dispute among the authorities whether the sureties on a sheriff's bond are liable for the wrongful act of their principal in seizing the property of a third person, the more numerous decisions are found arrayed in support of the rule that they are liable, and these cases appear to us to have the best of the argument. See Lammon v. Feusier, 111 U. S. 17, 28 L. ed. 337, 4 Sup. Ct. Rep. 286, where the authorities are reviewed and where the doctrine we deem sound is enunciated." Welter v. Jacobson, 7 N. D. 32, 66 Am. St. Rep. 632, 73 N. W. 65. In accepting the principle that the sure-

ties upon an official bond are liable for the acts of the officer done *colore officii* as well as *virtute officii*, we are aided by the admission of appellants' counsel in his brief, to the effect that, "if the court hold that under the allegations of the complaint, Charmley acted under color of office, then these appellants are bound; if it should be held that he acted individually—unofficially—respondent has failed to state a proper cause of action, and appellants are not liable."

With whatever controversy, therefore, that has waged between conflicting principles based on the distinction of official acts done by virtue of office and by color of office, we are not concerned, and the only point that remains for our determination is, Were the acts of defendant Charmley done either by virtue of office, or color of office, or were they such as lacked all official character?

Summarized, the allegations of the complaint are to the effect that Charmley, as deputy sheriff, in the nighttime, went to the home of Brown, and, announcing that he had in his possession a warrant for the arrest of Brown, as such deputy sheriff, took him into custody and compelled him to accompany him, which acts being wrongful, unlawful, and without reasonable cause or authority of law, caused the damage upon which the suit against his principal, the sheriff, was based. By reason of such acts, it is alleged, Charmley did not faithfully and impartially perform his duties as deputy sheriff in accordance with the conditions of his bond.

This status of fact admitted, appellant strenuously contends that "the acts alleged by the complaint do not constitute such a breach of the official bond of said deputy sheriff as to hold these appellants liable as sureties;" that "an officer must have something other than mere holding of office, which appears to give him authority to act which, if valid, would authorize the act." This contention has apparent support in many cases which seem to predicate color of office wholly upon the fact that the officer was armed with a warrant, or some process of that character directing him to do some official act; and this being the case, the fact that the unlawful act complained of was committed against the person or property of a party not named in the writ did not deprive it of the "color" requisite to its official character. Lammon v. Feusier, supra, and cases cited therein. Distinctions such as this, however, seem to us to be fanciful refinements, rather than substantial reason-

ing. It is true that Charmley, as deputy sheriff, was authorized to make an arrest at night without a warrant only in case he had reasonable cause to believe that the person arrested had committed a felony. Rev. Codes 1905, § 9733. It is also true that the complaint expressly negatives any such authority, by the statement that, at the time of the arrest, the man arrested had not committed any crime, and that his arrest was made, "without reasonable cause or authority of law." Yet it appears that Charmley went to Brown's house, demeaning himself as an officer, claiming that he had authority for making an arrest, and made the arrest, and compelled Brown to accompany him in this official character. In such character he was authorized to make the arrest if provided with a warrant, or without in case he had reasonable cause for believing that Brown had committed a felony. He pretended to have such authority, and intimidated, as we may presume, by such pretense, Brown, without resistance, submitted to arrest and to being held in custody. Charmley's official insignia was the means by which he was enabled to accomplish the wrongful act. It may safely be assumed that, had he gone at such time and under such circumstances as a private citizen, he would have met with immediate resistance. He abused authority derived wholly from the fact that he held the office of deputy sheriff. An act so performed by a public officer seems to us clearly to have been done under color of office within any accepted definition of that term. Certainly, his act was given a color as distinctive as though he had held a warrant directed against a person other than Brown, which state of fact, according to the holding of all later authority, constitutes color of office. Viewed from any standpoint it was gross misbehavior in office, the wrongful character of which was greatly aggravated by reason of being done under pretense of official authority. It is argued that the authority he assumed to exercise was wholly usurped; but "it is as much his duty as an officer to refrain from corruptly usurping or assuming powers not pertaining to his office, as to refrain from corruptly exercising those which properly belong to it." State v. Wedge, 24 Minn. 150; Hall v. Tierney, 89 Minn. 407, 95 N. W. 219. The condition of his bond to which the defendant sureties subscribed was that he should, "faithfully and impartially discharge the duties of said office of deputy sheriff." To use the powers pertaining to such

20 N. D.—37.

office as a means of maltreating, oppressing, or injuring another within
the jurisdiction in which he was authorized to exercise the functions
of his office, was not a faithful or impartial discharge of its duties.
As said by the supreme court of Iowa in a case where a constable ar-
rested without a warrant and maltreated a person whom he had no
reasonable cause to believe was guilty of crime, "his act was in the
line—direction—of official duty, but was illegal because it was in
excess of his duty. In the discharge of official functions, he violated
his duty and oppressed the plaintiff. This is all there is of it. If,
in exercising the functions of his office, defendant is not liable for
acts because they are illegal or forbidden by law, and for that reason
are trespasses or wrongs, he cannot be held liable on the bond at all,
for the reason that all violations of duty and acts of oppression re-
sult in trespasses or wrongs. For lawful acts in discharge of his duty
he, of course, is not liable." Clancy v. Kenworthy, 74 Iowa, 740,
7 Am. St. Rep. 508, 35 N. W. 427. "An official act . . . means
any act done by the officer in his official capacity under color and by
virtue of his office." Turner v. Sisson, 137 Mass. 191.

We think, therefore, that the allegations of the complaint set out
a wrongful malfeasance of Charmley committed under the guise of
an official act, unquestionably under color of office, and with charac-
teristics which might almost warrant a holding that it was done by
virtue of office. Certainly it is such an act as the sureties upon his
official bond should reasonably be held to have had in contemplation
as constituting a breach of its conditions, at the time they entered
into their undertaking. Greenberg v. State, 8 L.R.A.(N.S.) 1223,
and note (225 Ill. 174, 116 Am. St. Rep. 127, 80 N. E. 100).

The action of the District Court in holding that the complaint stated
facts constituting a cause of action against the defendant sureties was
proper, and its order is affirmed.

All concur, except CARMODY, J., who did not participate in the
decision.