[File No. 6212.]

McHENRY COUNTY, a Public Corporation, Respondent, v. C. L. HOWE et al.

STATE OF NORTH DAKOTA, Doing Business as the State Bonding Fund, and S. A. Olsness, as Director of the State Bonding Fund, Appellants.

(253 N. W. 851.)

Opinion filed March 28, 1934.

*P. O. Salhre,* Attorney General, and *Harold Shaft,* Assistant Attorney General, for appellants.

*Nels G. Johnson,* State's Attorney, for respondent.

Moellring, J. Plaintiff brings this action to recover damages against one C. L. Howe and the State Bonding Fund. Defendant Howe did not make an appearance in the case, and judgment was

entered against him by default. The case was tried to a jury as to the defendant, State Bonding Fund, and at the close of the evidence the plaintiff, and also the defendant, moved for a directed verdict, respectively. The trial court made findings of fact, conclusions of law and order for judgment in favor of the plaintiff and against the defendant, State Bonding Fund, finding damages in the sum of $300 and interest. Judgment was entered upon the findings.

The defendant, State Bonding Fund, on its appeal to this court, presents four specifications of error, all of which, however, go to the question of whether or not the said defendant is liable under the undisputed evidence in the case. The only question for determination, therefore, is one of law.

The material facts in the record disclose—and there is no conflict in the evidence—that the defendant, Howe, was a member of the board of county commissioners of McHenry County, and during his incumbency in office the county owned certain road machinery and equipment, which the commissioners decided should be sold. Without having any regular or formal meeting of the board concerning the same, or making any record thereof, the said commissioners, acting informally, agreed among themselves that each commissioner should dispose of by sale the particular machinery and equipment so agreed upon as was located in such commissioner's district, respectively. No record was made of this arrangement.

Pursuant to this understanding, Commissioner Howe sold a drag line to the Minot Gravel Company for the consideration of $500, receiving $250 as part payment, which amount he paid to the county treasurer. In like manner he sold a second hand truck belonging to the county and received a payment of $30. He also arranged with one Gange for the use of a tractor owned by the county, and pursuant to this arrangement the tractor was used by Gange in moving a building. The consideration for such use was the sum of $20 and was paid to Commissioner Howe. Subsequently, Howe received payment on the remainder of the purchase price for the drag line, or $250.

Defendant Howe admitted, and the evidence establishes, that he had not paid to the county treasurer the said $30 payment on the truck, the $20 paid to him for the use of the tractor, or the final payment of

$250 for the drag line, but that the proceeds from such payments were converted to his own use.

The record also discloses that when Commissioner Howe sold the drag line to the Minot Gravel Company, in an informal manner he apprised the other commissioners of the sale and of the fact that the first payment of $250 was turned over to the county treasurer.

At no time was formal action taken with reference to any of these matters, nor were such sales made or tractor let for hire by action of the commissioners as a regularly constituted board.

Plaintiff bases liability of the defendant, State Bonding Fund, by virtue of chapter 158, Session Laws of 1919, being article 10, chapter 4 of the Political Code (§§ 200b1 to 200b22, inclusive), 1925 Supplement to the Compiled Laws of 1913. The particular provision of our law fixing the liability of the State Bonding Fund is contained in § 667, Compiled Laws of 1913, as amended by chapter 193, Session Laws of 1923 (§ 667, 1925 Supplement to the Compiled Laws of 1913), which law reads as follows:

"Every person hereafter elected or appointed to the office of county commissioner of any county within the state of North Dakota is hereby required to give to the county an official bond before entering upon the duties of his or her office, conditioned on the faithful performance and discharge of the official duties of his or her office, and to render a true, accurate and full account of all business transactions, powers and trusts of every kind and nature that shall come before him or her, or into his or her hands as such officer, according to law. Such bond shall include all the business of the county done by him and protect the county against all acts of omission as well as commission including all errors caused by carelessness or inattention in office; such bonds shall be given through the State Bonding Department of the state of North Dakota and which bond shall be in the penal sum of two thousand dollars and the premium for said bond shall be paid out of the general fund of the county."

A county has general power to dispose of its personal property, such as road machinery or equipment. The authority for making such disposition rests solely with the board of county commissioners. Comp. Laws 1913, § 3274.

The right to sell the property, however, exists with the commission-

ers as a board only, and must be exercised at a regular or special meeting. When a sale is authorized by order of the board the law provides for an advertised notice of sale describing the property to be sold and stating the time and place of sale. The place of sale must be the office of the county auditor. The auditor conducts the sale, the property must be sold to the highest bidder, and the proceeds turned over to the county treasurer. Section 3274, supra.

It is apparent that the county's property was not sold in accordance with the statute. It is apparent, also, that Commissioner Howe had no authority to make the sales in question or to receive the proceeds; and there can be no question as to his personal liability.

It is contended by the defendant, State Bonding Fund, that under the provisions of the bonding law only such irregularities on the part of county commissioners, while acting and sitting as a regularly constituted board of commissioners, can create any liability with reference to the surety; and that in the instant case Commissioner Howe, having acted without authority of the commissioners as a board, his acts were performed in his personal and not in his official capacity.

The enactment of the bonding fund measures, as contained in said article 10, chapter 4 of the Political Code (§§ 200b1 to 200b22, inclusive), 1925 Supplement to the Compiled Laws of 1913, and chapter 193, Session Laws of 1923 (1925 Supplement to the Compiled Laws of 1913, § 667), changed the source of surety liability but did not change the law generally as it existed in this state with reference to fixing liability of sureties. Comp. Laws 1913, §§ 660 and 667.

Chapter 193, Session Laws of 1923, does not change the substance of § 667, Compiled Laws of 1913, except as to the surety, which by the amendment is fixed exclusively in the State Bonding Fund. Otherwise, the amendment is a re-enactment in exact language of said § 667.

While the specific question involved in the instant case has never been determined in this jurisdiction, we observe that in two previous cases decided by this court certain basic principles were recognized, and indicate an adherence to a broad and practical construction of surety liability as distinguished from the narrow or more restricted construction that obtains in some of the states.

In the case of Welter v. Jacobson, 7 N. D. 32, 73 N. W. 65, 66 Am.

St. Rep. 632, this court indicated that where a sheriff in making a levy under process and under color of his office, seized property of one not a party to the action, the sheriff and his sureties were liable to such third party. We quote from the opinion:

"While there is a dispute among the authorities whether the sureties on a sheriff's bond are liable for the wrongful act of their principal in seizing the property of a third person, the more numerous decisions are found arrayed in support of the rule that they are liable, and these cases appear to us to have the best of the argument. See Lammon v. Feusier, 111 U. S. 17, 28 L. ed. 337, 4 S. Ct. 286, where the authorities are reviewed, and where the doctrine we deem sound is enunciated."

In the case of Lee v. Charmley, 20 N. D. 570, 129 N. W. 448, 33 L.R.A.(N.S.) 275, this court had occasion to define generally the scope of liability under bonds of public officers. The court said, in part:

"The courts, in their consideration of those acts of public officers which result in liability to the sureties upon their official bonds, have found it convenient to divide such acts into three distinct classes: (1) Acts done by virtue of office; (2) acts done under color of office; and (3) acts done in a purely private or individual capacity. By an absolute agreement of authority, the sureties upon an official bond are liable for wrongful acts within the first class, and are not liable for those of the third class. Regarding those acts falling within the second class there has been for generations an irreconcilable conflict of authority. We are cited to long lines of cases in which the holding of liability or nonliability of the sureties is based entirely upon the distinction between acts done virtute officii and colore officii, the courts of many different states having announced holdings that are diametrically opposed. . . .

"The distinction made between the official acts that serve as the basis of these conflicting lines of authority is that 'acts done virtute officii are where they are within the authority of the officer, but in doing them he exercises that authority improperly or abuses the confidence which the law reposes in him; while acts done colore officii are where they are of such a nature that his office gives him no authority

to do them.' Brandt, Suretyship, 3d ed. § 690; Gerber v. Ackley, 37 Wis. 43, 19 Am. Rep. 751; People ex rel. Kellogg v. Schuyler, 4 N. Y. 187. Under the rule of the common law adopted by the courts of New York, New Jersey, North Carolina, and Wisconsin, the sureties upon an official bond were held liable only for wrongful acts of the officer done virtute officii. Acts done colore officii within the meaning of the definition above quoted were classed as unofficial acts, in doing which the officer was a mere trespasser and for which the sureties were not bound. State, Allen, Prosecutor, v. Conover, 28 N. J. L. 224, 78 Am. Dec. 54.

"The almost uniform current of the later cases, however, regards wrongful acts of a public officer colore officii as official acts, for which the sureties upon his bond are liable. Such is the holding of the courts of last resort of Pennsylvania, Maine, Massachusetts, Ohio, Virginia, Kentucky, Missouri, Iowa, Nebraska, Texas, California, Minnesota, Illinois, and of the Supreme Court of the United States."

If the surety's liability is limited to irregular or wrongful acts of the commissioners while sitting and acting as a board only, then, in practical effect, there could be no separate liability and, in fact, no liability at all, except for wrongs committed by the members jointly and acting as a board. This would be placing a very restricted construction upon the Bonding Fund Act, and not in keeping with the spirit of the rule that has been established in this state.

Our attention is called to the case of Rolette State Bank v. Rolette County, 55 N. D. 377, 213 N. W. 848, wherein it is held that a board of county commissioners is an entity, and that in order to bind a county to any contract there must be formal action on the part of the commissioners as a board.

While a county cannot be bound in a contractual way except by formal action of the commissioners as a board, this does not indicate that a county commissioner is liable only for such acts as are committed by him while participating in a formal board meeting, or that such is the extent of the liability of the surety on his bond.

In the case of Lee v. Charmley, 20 N. D. 570, 129 N. W. 448, 33 L.R.A.(N.S.) 275, supra, the defendant, a deputy sheriff, without a warrant of arrest and without any complaint having been made or

any crime having been committed, wilfully and maliciously caused the arrest and imprisonment of one Brown. It was held, that in the circumstances disclosed, the defendant and his bondsmen were liable for damages sustained by Brown. The court, in commenting upon the acts of the officer, stated: "Viewed from any standpoint it was gross misbehavior in office, the wrongful character of which was greatly aggravated by reason of being done under pretense of official authority. It is argued that the authority he assumed to exercise was wholly usurped; but 'it is as much his duty as an officer to refrain from corruptly usurping or assuming powers not pertaining to his office, as to refrain from corruptly exercising those which properly belong to it.' "

Cited as supporting authorities are State v. Wedge, 24 Minn. 150; Hall v. Tierney, 89 Minn. 407, 95 N. W. 219. See also Lammon v. Feusier, 111 U. S. 17, 28 L. ed. 337, 4 S. Ct. 286; Leger v. Warren, 62 Ohio St. 500, 57 N. E. 506, 51 L.R.A. 193, and note p. 222, 78 Am. St. Rep. 738; Johnson v. Williams, 111 Ky. 289, 63 S. W. 759, 54 L.R.A. 220, 98 Am. St. Rep. 416; Greenius v. American Surety Co. 92 Wash. 401, 159 P. 384, L.R.A.1917F, 1134.

Paraphrasing the language quoted and applying it to the instant case, suffice it to say, that it was as much the duty of Commissioner Howe as an officer, to refrain from corruptly usurping or assuming to perform powers incident to the commissioners as a board in disposing of the property, as to refrain from corruptly exercising those powers which properly belong to his office.

Moreover, the conditions of the suretyship, with reference to the office of county commissioner, are distinctly broader than that of deputy sheriff. The particular condition of Charmley's bond that was infracted, is to the effect that he would "faithfully and impartially discharge the duties of said office of deputy sheriff." A commissioner's bond provides, in addition to the "faithful performance and discharge of the official duties of his office," that he will render a true account of "all business transactions, powers and trusts of every kind and nature that shall come before him . . . or into his hands as such officer. . . ." It also provides that the bond shall include "all the business of the county done by him and protect the county against all acts of omission as well as commission including all errors caused by carelessness or inattention in office."

The language of the undertaking is certainly the antithesis of narrow construction, and we can scarcely conceive how it could be made broader.

The office of county commissioner is one of considerable importance and responsibility, the board possessing certain limited legislative and judicial powers and charged with broad ministerial duties. In the capacity of general business agent of the county, real and personal property of considerable value come into their hands, from time to time, for supervision and disposition. The language of the surety act quoted clearly indicates that the legislative intention was to protect the county's interests against loss from wrongful acts of commission and omission on the part of the officer, as the statute specifies.

It is contended, that since Commissioner Howe was not the legally authorized officer to receive proceeds from the sale of county property, such acts on the part of Howe in receiving the payments were wholly without the scope of his duties, and not such as could be anticipated and therefore not within the contemplation of the Bonding Fund Act.

A leading case, San Luis Obispo County v. Farnum, 108 Cal. 562, 41 P. 445, is cited as authority for defendants' contentions. In that case it was held that the sureties on the bond of the county auditor, were not liable where the auditor had received and failed to account for certain moneys collected for licenses and paid to him by the collector, which was not incident to the duties of his office, but which the law required the collector to pay direct to the county treasurer. A large number of sustaining authorities are also cited.

We can accept these decisions as setting forth sound law without precluding recovery on the part of the plaintiff in this case. As already indicated, the gist of the county's claims against Commissioner Howe and the Bonding Fund lies in the fact that, assuming pretended authority and under color of office, he wrongfully disposed of the county's property that was in his possession; and for which the county is entitled to recover from Howe and the Bonding Fund the reasonable value. It was by virtue of the fact that he was county commissioner that the property came into his possession and supervision, and the opportunity was presented to commit the wrongful acts. Had he tried to sell the property in an individual capacity, it is probable he would not have succeeded; but the fact that he was a commissioner of the

county, and no doubt known to the purchasers as such, and pretending to have authority to sell the same, he was enabled to carry out his designs. To determine that such acts were done under color of office, is clearly within the reasoning in the case of Lee v. Charmley, 20 N. D. 570, 129 N. W. 448, 33 L.R.A.(N.S.) 275, supra.

It is contended; further, that since the said pretended sales are void and no title passed to the purchasers, the county still has the right to recover the property from the purchasers. The record does not disclose whether the properties so sold are now, or were at the time of the commencement of this action, in existence, or to what use, if any, they had been subjected in the meantime, or what value, if any, they may now have. The liability of a surety is not dependent on whether the obligee may have some other remedy, or might have pursued such remedy. The conditions of the bond fix the surety's liability. Upon payment by the surety, such rights as then existed in favor of the obligee, the surety acquires by subrogation. National Surety Co. v. State Sav. Bank (C. C. A. 8th) 156 F. 21, 13 Ann. Cas. 421, and note in 14 L.R.A.(N.S.) 155; Hill v. Fleming, 128 Ky. 201, 107 S. W. 764, 16 Ann. Cas. 840.

Commissioner Howe, having disposed of the drag line and the truck mentioned without authority, both the principal and his surety are liable for the reasonable value of the same; and while the record is meager with reference to proof of damages, the purchasers having paid certain sums for the properties, respectively, and Howe having received those amounts for the same, and no evidence appearing in the record otherwise, it must be assumed that such chattels were worth at least the amounts which were paid therefor. The principal, Howe, could hardly deny their value, as he received such amounts for them, and the surety has not seen fit to present proof otherwise.

The record also discloses that Commissioner Howe hired to one Gange a caterpillar tractor, the property of the county, which Gange used, and for which use he paid a consideration of $20. Gange having used the county's property, and the act being unauthorized and wrongful, the county would have the same rights with reference to recovery of damages as an individual would have in the same circumstances; and the party so using the tractor having paid the sum of $20 for its use, and no evidence to the contrary appearing in the rec-

ord, it must be assumed that the reasonable value of the use of this property was at least the sum of $20; and both Commissioner Howe and his surety are liable therefor in such amount.

The judgment of the trial court is affirmed, with costs to plaintiff.

Burr, Ch. J., and Christianson, Nuessle and Burke, JJ., concur.